## RICHMOND MANUFACTURING COMPANY *v.* ATLANTIC DE LAINE COMPANY.

Every owner of land through which water flows is entitled to receive the water uncorrupted in quality from riparian proprietors above him, and a court of equity will issue an injunction to prevent such corruption, upon satisfactory proof thereof.

BILL IN EQUITY, brought by the complainants, a corporation situated upon a running stream, the Woonasquatucket River, engaged in the business of dyeing, bleaching, and printing cotton cloth, and the general business known as calico printing, against the respondents, a corporation situated higher upon the same stream, engaged in the business of manufacturing, dyeing, coloring, and producing goods made partly of wool, known as worsted goods.

The bill alleged that the respondents emptied and discharged their refuse dye stuffs into the stream, and by so doing injured its water and rendered it unfit for use by the complainants for dyeing, bleaching, and calico printing at the place where it was taken from the river for use by them, and prayed for a perpetual injunction enjoining the respondents from so emptying and discharging their refuse dye stuffs.

The answer admitted that the respondents emptied their refuse dye stuffs into the river when necessary, and as required in the prosecution of their business, but denied that by so doing they perceptibly or appreciably injured its water, or rendered it unfit for the purposes for which it was used by the complainants, and also claimed that as riparian proprietors they had a lawful right so to do.

It appeared in evidence that the complainants took their water from the river through a conduit, the entrance to which was situated 2,875 feet below the drain of the respondents' works, and that the distance between the entrance to said conduit and the works of the complainants was 2,070 feet, making the distance

between the place on the Woonasquatucket River, where the respondents empty their refuse drugs and dyes, and the place where the water of said river is taken into the complainants' works for use, 4,945 feet, or nearly one mile.

Much evidence was taken by both parties, which is stated as fully as is necessary to an understanding of the points of law decided, in the opinion of the court.

*Caleb Cushing, Hart & Parsons*, for the complainants, contended, I. That under the rules which govern courts of equity in the exercise of their general jurisdiction in cases of like character with this, the complainants, if the allegations of their bill were sustained by their proofs, were entitled to the relief prayed for, namely, an absolute and perpetual injunction against the respondents, citing 2 Story's Eq. Juris. §§ 925–927, notes (8th ed.), and cases cited ; *Sutcliff* v. *Isaacs*, 1 Pars. Sel. Eq. Cas. 496 *et seq. ; Wood* v. *Sutcliffe*, 8 Eng. L. & E. 217 *et seq. ; Crossley* v. *Lightowler*, Law Rep. 3 Eq. 291 ; *S. C.* Law Rep. 2 Ch. 478 ; Angell on Watercourses (6th ed.), 228 *et seq.*, notes, and cases cited ; *Goldsmid* v. *The Tunbridge Wells Improvement Commissioners*, Law Rep. 1 Ch. 354 ; *Holsman* v. *Boiling Spring Bleaching Co.* 14 New Jersey Equity, 338 *et seq.*, and cases cited.

II. That the evidence introduced by the respondents to show that there were other manufacturing establishments on the Woonasquatucket River, the refuse matter from which was poured into it, thereby aiding in the pollution of the stream, could not avail the respondents, because a wrong-doer cannot defend his own share in a wrong by showing that another is equally guilty with him, citing *Wood* v. *Sutcliffe, Crossley* v. *Lightowler*, and Angell on Watercourses, 240, *supra;* also *St. Helen's Smelting Co.* v. *Tipping*, 11. H. L. Cas. 642.

III. That the averment in the answer, that the respondents were riparian proprietors, was no defence to the allegations of the bill, and could not avail the respondents as a justification of their pollution of the river, or as the basis of any right to do the acts admittedly done by them and complained of in the bill, citing *Bordwell* v. *Ames*, 23 Pick. 333 ; *Snow* v. *Parsons*, 28 Vt. 459, and Angell on Watercourses (6th ed.), 233–4, and cases cited.

*R. W. Greene, Payne & Tobey*, for the respondents, contended, I. That the complainants were not perceptibly or appreciably

injured by the introduction by the respondents of their refuse drugs and dye stuffs into the Woonasquatucket River, in the manner in which it was done by them.

II. That the respondents had a lawful right to empty their refuse drugs and dye stuffs into the Woonasquatucket River in the manner in which it was done by them, citing *Snow* v. *Parsons*, 28 Vt. 459 ; *Jacobs* v. *Allard*, 42 Vt. 303 ; and Angell on Watercourses, § 140 *d*, and cases cited, pp. 240 243, 6th ed., and,

III. That even if the last foregoing points be ruled against the respondents, still where the injury as in this case, if any existed, was slight, and could be remedied or be compensated in damages, an injunction ought not to issue, more especially when the issuing of the same would work great injury to the respondents.

They represented that the manufacturing establishment of the respondents was a very large one, the amount of investments in mills, machinery, houses, &c., at their works being about fifteen hundred thousand dollars, the number of persons employed about eight hundred, and the amount of the annual product about fifteen hundred thousand dollars ; and that the effect of granting an injunction such as now sought by the complainants would be to stop the works of the respondents, as they had no other means of getting rid of their refuse dyes than by discharging them into the Woonasquatucket River, and contended that under these circumstances it was the settled law that an injunction should not issue, but the complainants be left to pursue their remedy at law if they had suffered any injury, citing *Wood* v. *Sutcliffe*, 2 Sim. N. S. 168 ; *Sparhawk* v. *Union Passenger Railway Co*. 54 Pa. State, 401 ; *Dunning* v. *Aurora*, 40 Ill. 481 ; *Thebout* v. *Canova*, 11 Fla. 143, 172, and cases cited ; *Zabriskie* v. *Jersey City & Bergen R. R. Co*. 2 Beas. 314 ; *Attorney General* v. *Gee*, Law Rep. 10 Eq. 131 ; Story's Eq. Juris. § 925 ; Adams Eq. s. p. 211, and notes " p " and " q," and cases cited ; Angell on Watercourses, chap. iv. § 140 *d*, and cases cited.

POTTER, J. In this case the complainants allege that they are riparian proprietors on the banks of the Woonasquatucket River, and that they and their predecessors in title have owned and maintained certain mills upon the banks of said river since 1838, used by them for bleaching, dyeing, and calico printing, and that until polluted by the respondents the waters of said river were

pure and well adapted for said purposes; that (A. D. 1851) the respondent corporation erected a mill upon the banks of said river, above the complainants' mills; that (1863) they enlarged their establishment, and have, since that went into operation (1865), emptied into said river the refuse of said mill — dye stuffs, oily and fatty substances — by which the waters of the river have been polluted and rendered unfit for use by the complainants in their said business; their clearness and purity destroyed; their use for ordinary purposes of washing and drinking and for cattle, prevented; and the water in low stages rendered offensive to smell and injurious to health, by which the complainants have been greatly injured, and obliged, at some times, wholly to abandon some branches of their business. And they pray for a perpetual injunction.

In the trial of the cause a great deal of evidence has been taken relative to the alleged pollution and the causes of it, and its effects upon the business of the complainants, and specimens of the water taken at various times and places have been analyzed by chemists and exhibited to the court.

The respondents admitted that the water of the river, "when free from foreign substances, was as pure as the water of rivers in this region usually is," and that they had, when necessary, but not continually, emptied their refuse dye stuffs into the river; but denied that they had appreciably injured the water or rendered it unfit for the complainants' use, or that the complainants had been materially injured by it; and also claimed that as riparian proprietors they had a lawful right to use it as they had done.

The respondents also claimed and introduced evidence to show, that the refuse from certain stables, drains, privies, and tanneries have been emptied into the river between the mills of the complainants and respondents, and that the amount of refuse discharged into the river by the respondents was very small compared with the volume of the stream; and they claim that the evidence of the experts shows that the constant tendency of such a stream in running the distance of a mile between the mills, would be to purify itself by sediment and by chemical change in the character of the matter discharged into it. And a great deal of evidence has been put in as to the comparative fairness of the various experiments.

It is also claimed by the respondents that the imperfections in the goods manufactured by the complainants may have arisen from other causes ; that their goods have· sold well, and that they might have protected themselves from all injury by a properly constructed filter.

The complainants urge that, by the pollution of the water, they have been compelled to abandon the manufacture of the sort of goods they formerly made, and to make goods showing very little white; that if their goods have sold well, it has cost more to make them ; that the alleged impurities are not found above the respondents' mills, and that although all the other alleged sources of impurity, except the stables, were there before 1865, there was no complaint before the respondents erected their large mill (no woollen goods having been made at the respondents' mill from 1856 to 1864, and Taft & Weeden's mill having never since 1866 emptied into the stream any dye-stuffs, or the contents of wool washing), and that while, in the spring, the proportion of impurity is of course less, compared with the whole volume of water, the water in its lowest stages is very impure and very offensive.

The respondents do not in fact deny that they have thrown noxious substances into the stream, but they have taken considerable evidence to endeavor to show that others as well as themselves have polluted the water, and that the complainants have not been materially damaged thereby.

We do not propose to recapitulate the evidence. One general remark applies to it, that while the complainants' evidence positively shows the pollution of the water, and that the respondents have been the cause of at least a considerable proportion of this pollution, the evidence on the part of the respondents is of a negative character, going to show that the water is at times purer than at others.

If the respondents have polluted the water, it is no excuse for them that others also have polluted it.

And it is no defence to say that the complainants could have filtered the water at no great expense. The complainants are under no obligation to do this, and the respondents have no right to put them to the expense of doing it.

The principles of law which govern the case are well settled.

Riparian proprietors, mill owners or others, have no right to render the water of a stream unwholesome or offensive. Angell, Watercourses, 6th ed. p. 233, § 136.

He has a right to the reasonable use of the water for his own purposes, but he must not do anything unnecessarily to abridge the use of it to those below him.

The general doctrine is well stated in the opinion of Chancellor Greene, of New Jersey, in the case of *Holsman* v. *Boiling Spring Bleaching Co.* 14 New Jersey Equity, 335, 338, 342.

That was a suit to restrain defendants from polluting the water by emptying into it the refuse of the bleaching works. In that case the defendants claimed that they had exercised the right for twenty years, and also alleged that they had erected a filter for the purpose of eliminating from the water all injurious substances.

The chancellor examines the points made at length. " Every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water, and to have the same flow in its accustomed and natural course, without obstruction, diversion, or corruption. The right extends to the *quality* as well as to the quantity of the water." And he quotes Chancellor Kent : " The right of the riparian proprietor to the use and enjoyment of a stream of water in its natural state, is as sacred as the right to the soil itself."

In that case, the complainants had served a notice on the defendants at the time of building their (defendants') mill, cautioning them against injuring the water ; and the charter of the defendant corporation contained a provision that they should not injure the water for domestic purposes. But the court did not consider these facts as affecting the legal rights of the parties.

There is no doubt of the power of the court to issue the injunction prayed for, and we think a proper case is made out for doing it.                         *Decree for perpetual injunction.*