WILLIAM E. POWERS, *Attorney General vs.* EDWARD G. LAWSON, *et al.*

NOVEMBER 27, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is a petition for a writ of certiorari to quash a decree of the superior court entered under general laws 1938, chapter 638, as amended by public laws 1956, chap. 3632, requiring the petitioners, who were the respondents below, to submit certain plans and specifications in connection with a dam. The writ was issued and the record has been duly certified to this court.

The action was commenced in the superior court by a petition in the nature of an "information ex-officio," as prescribed by statute, brought by the attorney general wherein he presented to that court the complaint of the chief of the division of harbors and rivers made under the provisions of chap. 638, §6, as amended.

The complaint, which was filed with the petition, stated in substance that respondents, petitioners here, are the owners of the old Lebanon-Walker Dam No. 293 on the Ten Mile River in the city of Pawtucket; that they have removed three planks from the crest of said dam thereby lowering the level of the pond between two and two and one-half feet; that such dam was substantially altered without submitting plans and specifications of the proposed work to the chief and without his approval; that he received complaints by persons owning and representing property which might be liable to injury or destruction by the breaking of the dam; that the chief gave respondents written orders to engage a registered professional engineer to prepare plans and specifications for the repair and strengthening of the dam; that such plans and specifications have not been submitted nor has rehabilitation been accomplished; and that the safety of life and property was endangered by such default.

The petition in effect prayed that respondents "be ordered forthwith to comply with the requirements of the Chief of the Division of Harbors and Rivers theretofore made in the premises, or with such other orders as might be made by the Court, to secure all persons having reasonable cause to apprehend injury to life or property from the unsafe condition of such dam."

The evidence in substance supported the allegations of the complaint except the allegation that on information and belief the safety of life and property was endangered. The testimony also showed that the trench dam was a wooden structure about 25 feet wide holding back the waters of

Lebanon Pond, and that either three or four horizontal boards were removed from the crest of the dam so that it was lowered about two and one-half feet. The chief of the division of harbors and rivers testified that he considered the removal of the planks a substantial alteration in that it affected the pond level for two or three feet, and that the complaints received by him were based on objections to the lower water level which exposed the bottom areas of the pond and resulted in mud flats, pollution and the breeding of mosquitoes. He testified that these complaints stated that this condition was detrimental to the property and health of the persons complaining. But he did not testify that the reduced water level endangered the safety of life and property.

In addition the chief testified that the entire dam was in a gross state of disrepair; that respondents had requested permission to demolish the dam; that the plans which had been submitted were for the disposal of the entire structure and not for repairs; that the mill was not in operation; and that respondents had told him they had no further use for the dam.

The respondents below, petitioners here, rested their case without submitting any testimony. Thereafter the trial justice filed a rescript in which he found that the dam had been substantially altered and that its condition created a health hazard. After making such findings he stated that the issue before him was whether the chief of the division of harbors and rivers had authority to issue the order requiring respondents to engage an engineer to prepare plans and specifications for the repair and strengthening of the dam and whether there had been compliance with such order.

The trial justice decided that under the provisions of G. L. 1938, chap. 638, as amended, the chief had the authority to issue the order in question; that upon the evidence before him it was a reasonable requirement in all the cir-

cumstances; and that there had not been a compliance with such order. Thereafter a decree was entered ordering respondents below, petitioners here, to submit to the chief of the division of harbors and rivers before December 30, 1956 suitable plans and specifications prepared by a registered engineer.

The petitioners here contend that the trial justice erred in entering such decree. They argue that chap. 638, as amended, is unconstitutional; that they are not legally bound to maintain the dam in question, since it is no longer used to produce water power and there is no future use for it; and finally that the chief is given no authority under chap. 638, as amended, to base his action on the ground of any health hazard resulting from pollution or the breeding of mosquitoes.

The attorney general contends that the statute in question is valid; that the chief of the division of harbors and rivers did not exceed his authority under chap. 638, as amended; and that the decree entered in the instant case is in accordance with the law. We do not deem it necessary to consider the constitutional questions raised by petitioners. Chapter 638, §4, provides: "No dam or reservoir shall be constructed or substantially altered until plans and specifications of the proposed work shall have been filed with and approved by the said chief."

After carefully considering the entire record, it is our opinion that the evidence does not support the complaint of the chief of the division of harbors and rivers, nor does it support the findings of the trial justice that the dam in question had been substantially altered within the meaning and purposes contemplated by chap. 638. It therefore follows that petitioners here, respondents below, were not legally bound to file plans and specifications by virtue of said §4.

It is clear from a reading of the entire statute in question that the alterations prohibited by §4 thereof contem-

plated substantial alterations to a dam or reservoir in use for the purpose of preventing danger to life or property from the breaking of such dam or reservoir resulting from the uncontrolled escape of water contained therein. It is likewise clear from the testimony that the use of the dam was abandoned and discontinued by petitioners and that it was their intention to do so by removing the boards in question.

This is a statutory proceeding. We find nothing in the statute in question which compels petitioners, respondents below, to keep the dam in operation against their will. Chapter 638 provides that no substantial alterations may be made without the approval of the chief of the division of harbors and rivers. However, there is no provision in the statute prohibiting the abandonment of the dam or the lowering of the water level behind it by the owner thereof if he chooses to do so. Indeed the statute itself appears to contemplate drawing off the water in whole or in part behind the dam in the interest of safety.

After careful consideration it is our opinion that, in the absence of valid statutory provisions prohibiting such removal or abandonment, the owners of a dam are under no legal obligation to keep it in operation for the benefit of others. This is in accordance with the great weight of authority. See 56 Am. Jur., Waters, §159, p. 626. See also *Taft* v. *Bridgeton Worsted Co.*, 237 Mass. 385, annotated in 88 A.L.R. 136.

On the record before us it is also our opinion that §5, and §6, as amended, of chap. 638 do not apply to the facts in the instant case. The ruling by the trial justice to the effect that the chief of the division of harbors and rivers had authority to issue the order in question is not warranted by the evidence and the law. The purpose of §5, and §6, as amended, was clearly to provide against the danger of loss of life or property from the breaking of a dam due to excess water or water pressure, and not to a condition such

as existed in the instant case where, by the removal of the boards in question, the water had been drawn off, in whole or in part, resulting in a situation where the dangers contemplated by said statute could not in fact occur.

The latter portion of §6 provides that "the court may pass such order and decree in the premises as will effectually secure the persons interested from danger or loss from the breaking of the dam or reservoir complained of * * *." This language convinces us that the danger contemplated by the statute in question is a danger of loss of life or property from the *breaking* of a dam from excess water or water pressure. Therefore the statute is not applicable in the instant case and the chief of the division of harbors and rivers lacked authority to issue the order in question. Hence, the instant decree is erroneous.

The petition for certiorari is granted, the record of the decree of the superior court is quashed, and the records and papers certified to this court are ordered sent back to the superior court with our decision endorsed thereon.

*Philip M. Hak,* for petitioners.

*William E. Powers,* Attorney General, *Alfred E. Motta,* Special Counsel, for respondent.