DONALD R. HOOD *et al.* AND WILLIAM E. POWERS, *Atty. Gen., ex rel.* DONALD R. HOOD *et al. vs.* HYMAN L. SLEFKIN *et al.*
ANITA H. WINSTEN *vs.* HYMAN L. SLEFKIN *et al.*

JULY 24, 1958.

PRESENT: Condon, C.J., Roberts, Andrews and Paolino, JJ.

ROBERTS, J.   These two bills in equity were brought by several complainants among whom are the owners of land located on the shore of a pond formed by a dam owned by the respondents.   Also parties complainant are the owners of land abutting upon the stream below that dam.   Subsequent to the filing of the bill of complaint in the case of Donald R. Hood et al. v. Hyman L. Slefkin et al., by decree of the superior court additional individuals were added as parties complainant, and the attorney general of the state at the relation of such complainants and with his consent was also added as a party complainant.   The complainants seek to enjoin the respondents from altering and maintaining the dam in such a way as to bring about a change in the level of the pond, thereby affecting the normal fall of water in the stream below the dam.   The causes were heard on their merits in the superior court, and thereafter a justice of that court entered decrees granting the complainants certain injunctive relief.   From those decrees the respondents have appealed to this court.

There is no substantial dispute concerning the material facts in these cases.   The respondents are the owners of several parcels of real estate in the easterly part of the city of Pawtucket.   Located upon one of these parcels is a dam or a complex of dams known as the Lebanon-Walker Dam No. 293.   This dam impounds a body of water, known as

the Lebanon Pond, which is formed by the confluence of two small streams known respectively as the Seven Mile River and the Ten Mile River. The pond extends in a northerly direction from the dam along the boundary between the city of Pawtucket in this state and the towns of Attleboro and Seekonk in the Commonwealth of Massachusetts. Near its southerly end, a short distance from the dam, the pond is crossed east to west by a public highway known as Central avenue. All of the complainants herein, excepting the complainants William R. Casey and Mary R. Casey his wife, and Anita H. Winsten, are the owners of land located on or near the westerly shore of this pond to the north of said Central avenue.

The Lebanon-Walker Dam No. 293 is so designed as to comprise two impounding structures. The longer of these extends from the west shore of the pond and is known and generally referred to as the westerly dam. The shorter section thereof extends from the westerly dam to the east shore of the pond and is commonly known as the trench dam. At the shore end of the westerly dam there is located a mechanical apparatus designed to permit the diversion of water from the pond into a mill building, which building is in a state of disrepair and no longer is used for manufacturing purposes.

From the downstream face of the dam three channels extend in a southerly direction. These channels finally converge to form a single stream which is known as the Ten Mile River. Between these channels are two small islands which are the property of respondents. The easternmost channel below the dam has always taken care of water flowing over the trench dam. The middle and westernmost of these channels has always taken care of water flowing over the westerly dam. The complainants Casey are the owners of land below this dam which borders upon the westernmost channel as well as upon the property of respondents.

In December 1954 respondents caused to be removed certain flashboards which made up a superstructure along the top of the easterly or trench dam. When these flashboards were removed a substantial volume of the water in the pond flowed over the trench dam into the easterly channel below that dam. As a result thereof the level of the pond has been permanently lowered by about two and one-half feet, and has exposed a large portion of the bottom thereof. Because of this action an unusual volume of water also flooded the easterly channel below the dam, while the supply of water that normally flowed over the westerly dam has been substantially cut off. As a consequence the westernmost channel below the dam has substantially dried up and only a stagnant pool of water remains in this channel. The flow over the dam is now going entirely into the easternmost channel, allegedly flooding a part of complainant Winsten's land. The respondents have not replaced the flashboards on the trench dam, and its lowered height remains with the result that the conditions complained of above appear to be permanent.

In his rescript the trial justice found that complainants had failed to prove by a fair preponderance of the evidence that Lebanon Pond is a natural body of water that existed prior to the construction of the dams. He then went on to treat the complainants who own land on Lebanon Pond as having riparian rights in that body of water. While it is true that the owners of land abutting on an artificial pond may be riparian proprietors therein, Angel on Watercourses (5th ed.), §41, p. 37, it does not appear from an examination of the record here either that these complainants have proved by a preponderance of the evidence that they have riparian rights in the pond or that their predecessors in title had riparian rights in the streams from which the pond was formed. However, we are of the opinion that a determination of the issue relating to the maintenance of the dam does not turn on the rights of a riparian proprietor,

184

so that for the purposes of this issue we may assume without deciding that those complainants who own land on the west shore of Lebanon Pond are riparian proprietors.

The first question to be considered is whether one who has riparian rights in a body of water obstructed by a dam acquires a right to have that dam so maintained that the level of the water therein will not be lowered. The trial justice found that such riparian owners do acquire a right to the maintenance of the artificial conditions which result from the erection of a dam. In his rescript he said that those "who have purchased and improved their properties upon the basis of the existence of a pond at a normal level are entitled to prevent the owners of the land on which the obstacle exists from doing any affirmative act, at least, to destroy the pond and substantially the riparian character of their holdings."

In so finding the trial justice relied in part upon the decision in the case of *Marshall Ice Co.* v. *LaPlant,* 136 Iowa 621. That case was concerned with the right of an owner of land bordering on an artificial pond who had purchased the land with a right to harvest ice from the pond. The case was in fact decided upon a narrow ground, the court saying, at page 635, that "where the owner of a dam * * * sells land bordering on the stream obstructed thereby for a purpose dependent on the continuance of the water level so created, and receives the enhanced value due to its adaptability to such use, the conveyance carries with it as appurtenant to the estate conveyed an easement in having prevailing conditions continued."

It is clear that the Iowa court in deciding that such a purchaser acquired an easement in the pond as it stood at the time of the purchase was limiting its decision to cases where the land was purchased for a purpose dependent upon the continued existence of the pond at the prevailing level. That case is therefore distinguishable from the case at bar, since in the instant case no evidence to which our

attention has been directed establishes that any of these particular complainants purchased their land for a purpose dependent upon the continued maintenance of the water level in the pond.

It appears that the trial justice also based his decision in the instant case on the theory that an upper riparian owner may acquire a right to compel the owner of a dam erected below to so maintain the dam as to preserve the water level in the artificial pond formed thereby. It is well settled that where an owner of land has erected a dam and overflowed land in which others have riparian ownership, he may, in appropriate circumstances, acquire a prescriptive right to maintain the dam and to overflow the land of the upper owners. In some jurisdictions the courts have held that in such cases the servient estates acquire a reciprocal right to enjoy the benefits which result from the formation of a pond by the dam. In these cases it has been held that the owner of the dominant estate becomes obligated to maintain the improvement for the benefit of the servient estates or at least to avoid any action which will effect the destruction of the improvement. See 88 A.L.R. 130, 131.

However, the weight of authority appears to be to the contrary. The more widely accepted rule is that the owner of a dam is not obliged to maintain it for the benefit of other riparian owners who benefit from the formation of an artificial pond by the erection of the dam. *Greisinger* v. *Klinhart,* Mo., 282 S.W. 473; *Taft* v. *Bridgeton Worsted Co.,* 237 Mass. 385; *Goodrich* v. *McMillan,* 217 Mich. 630; *Drainage District No. 2* v. *City of Everett,* 171 Wash. 471.

In the case of *Greisinger* v. *Klinhart,* the court stated at page 477: "But granting, without deciding, that the defendants in this case have acquired, by prescription, a right to overflow plaintiff's lands, yet, according to the greater weight of authority, no reciprocal rights are vested in plaintiff as owner of the servient estate." In *Taft* v. *Bridgeton*

*Worsted Co.*, the Massachusetts court said at page 389: "Of course the plaintiffs [owners of the flowed lands] had no right to compel the defendant to maintain its dam for their benefit. The defendant had a right at any time to take down its dam or to cease to impound the water for any reason which seemed to it sufficient. With such conduct the plaintiffs have no legal concern." In *Drainage District No. 2 v. City of Everett*, the Washington court said at page 477: "The acquisition of the right to divert the waters and to maintain a reservoir for impounding those waters, though that artificial condition was maintained by appellant for the prescriptive period, carried with it no reciprocal right to have its maintenance continued for the benefit of the servient estate."

In 3 Farnham, Waters and Water Rights, §819, pp. 2402, 2403, the text writer explains the rule as follows: "The fact that the exercise of the easement is of advantage to the owner of the servient estate will give him no right to insist on the exercise of the easement on the part of the dominant owner. An easement exists for the benefit of the dominant estate alone, and the servient owner acquires no right to insist on its continuance, or to ask for damages on its abandonment."

In *Powers* v. *Lawson*, 86 R. I. 441, 136 A.2d 613, in considering another phase of the litigation that has arisen with respect to this dam, we indicated clearly our accord with the rule supported by the weight of authority. We reaffirm that opinion. Those owners of land which is overflowed by the erection of a dam, the owner of which has acquired the right by prescription to so continue to overflow their land, gain no reciprocal right to require that owner to maintain the dam or the water level of the pond formed thereby. For this reason we think it was error to enter a decree in which the respondents were enjoined from altering the dam so as to cause the water level in Lebanon Pond to be lowered.

The trial justice also found from evidence presented to him concerning odors emanating from the exposed bed of Lebanon Pond that these respondents were maintaining a nuisance which the complainants had a right to have abated. In our opinion, the evidence does not support the finding so made. A nuisance is an injury resulting from an unreasonable or unlawful act. *Sullivan* v. *Waterman,* 20 R. I. 372, 374. We think it is essential to the establishment of liability for the maintenance of a nuisance to prove that the respondents in the instant case either unlawfully caused the condition from which the alleged nuisance resulted or had control over the circumstances which produced it.

The evidence here reveals that the alleged nuisance arises from odors caused by the decay of the muck or sludge resting on the exposed bottom of the pond. The evidence further shows clearly that this muck or sludge is deposited in the stream in the Commonwealth of Massachusetts as a result of the operation of a sewage disposal plant there and that it flows from Massachusetts into Lebanon Pond. Nowhere in the evidence does it appear that these respondents have authorized or have participated in the depositing of such sewage sludge in the stream or that they have any control over its deposit therein. In such circumstances we are of the opinion that it was error to charge them with the maintenance of a nuisance.

We now turn to a consideration of the case of the complainants Casey. These complainants own a parcel of land below the dam and the mill property of respondents. We do not see that they stand in any different position from those whose property borders on Lebanon Pond with respect to acquiring a right to have the dam maintained or the water level in that pond preserved. Under the rule supported by the weight of authority it is well established that in this particular neither upper nor lower riparian own-

ers acquire the reciprocal right to have a dam maintained or the water level preserved.

However, we feel it is our duty to point out that if the complainants Casey established their riparian proprietorship in the bed of the westerly channel below the dam, they would be entitled to their riparian right to use and enjoy the water of the stream flowing in its accustomed and natural course. *Richmond Mfg. Co.* v. *Atlantic De Laine Co.*, 10 R. I. 106, 111. It is clear that these respondents have invaded the *alleged* riparian right of the complainants Casey by lowering the easterly dam so as to divert the entire flow into the easterly channel. It therefore appears that in the present situation they do not have the use and enjoyment of the natural flow of the stream in the westerly channel.

Nevertheless, on the record before us there is a fatal difficulty with respect to said complainants' proof of their alleged claim of riparian rights. This is that we cannot say that they have discharged the burden of proof incumbent upon them. In other words, they have not shown by a preponderance of the evidence that they are actually riparian proprietors in the westerly channel. We therefore hold that it was error to grant them injunctive relief.

In the case of Anita H. Winsten v. Hyman L. Slefkin et al. the complainant is the owner of a parcel of land which is located below the dam and borders on the easternmost channel of the stream. In addition to seeking relief concerning the diversion of water into the said channel, she also seeks relief concerning a right of way which she claims extends from the northernmost line of her property across respondents' land toward Central avenue.

We are unable to differentiate between the complainant Winsten and the complainants Casey with respect to the alleged violation of her water rights as a riparian proprietor in the easternmost channel of the stream below the dam. It is our judgment that, like the complainants Casey, she

has failed to meet the burden of proof of showing riparian proprietorship in the said channel by a preponderance of the evidence. For this reason we are of the opinion that it was error to grant her relief based upon an invasion of her alleged riparian rights.

Because of the view which we take with respect to this aspect of the case the final decree entered in the case of Anita H. Winsten v. Hyman L. Slefkin et al. should be modified by striking therefrom paragraphs First, Second, and Third.

[9] The trial justice did find in this complainant's favor with respect to her allegations that a right of way extended from the northernmost line of her property over the respondents' land in the direction of Central avenue. We have examined the record and find that her contention in this respect was the subject matter of conflicting testimony. It is well settled that where a trial justice sitting without a jury reaches a decision based on conflicting evidence, his decision will be accorded great weight and will not be disturbed unless it is clearly wrong. *Sal's Furniture Co.* v. *Peterson,* 86 R. I. 203, 133 A.2d 770. From our examination of the evidence which relates to this issue we are not persuaded that the trial justice either overlooked or misconceived any material portion of it. Therefore we cannot say that he was clearly wrong in concluding that the alleged right of way existed.

In the case of Donald R. Hood et al. and William E. Powers, Atty. Gen., ex rel. Donald R. Hood et al. v. Hyman L. Slefkin et al., Equity No. 2680, the appeal of the respondents is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

In the case of Anita H. Winsten v. Hyman L. Slefkin et al., Equity No. 2681, the appeal of the respondents is sustained in part, the decree appealed from is modified as above set forth, and the cause is remanded to the superior

court with direction to modify its decree in accordance with this opinion.

### ON MOTION TO REARGUE.
#### NOVEMBER 6, 1958.

PER CURIAM. After our opinion herein was filed, the complainants in the cases by permission of the court presented motions for leave to reargue. In the case of Donald R. Hood et al. and William E. Powers, Atty. Gen., ex rel. Donald R. Hood et al. v. Hyman L. Slefkin et al., Equity No. 2680, the complainants subsequently withdrew their motion for leave to reargue. However, in the case of Anita H. Winsten v. Hyman L. Slefkin et al., Equity No. 2681, the complainant presses her motion for leave to reargue.

She contends that this court has either overlooked or misconceived certain evidence relating to the location of the boundaries of land owned by her lying east of the east trench below the Lebanon-Walker Dam. Upon consideration we are of the opinion that on the evidence in the record which complainant alleges we have overlooked or misconceived, her contention raises an issue of sufficient importance to warrant further arguments on the narrow issue of the precise location of the boundary of her land in relation to the east trench below the Lebanon-Walker Dam.

As thus limited, the motion of the complainant for leave to reargue is granted in the case of Anita H. Winsten v. Hyman L. Slefkin et al., Equity No. 2681.

### DECISION ON MOTION FOR REARGUMENT.
#### APRIL 23, 1959.

PER CURIAM. After our decision in the above case, *Winsten v. Slefkin*, 88 R. I. 178, 143 A.2d 683, the complainant requested and received permission to file a motion for reargument. Pursuant to this permission she filed such a motion.

In our opinion granting the motion, *Winsten v. Slefkin*, 88 R. I. 190, 145 A.2d 549, we stated in part: "Upon

consideration we are of the opinion that on the evidence in the record which complainant alleges we have overlooked or misconceived, her contention raises an issue of sufficient importance to warrant further arguments on the narrow issue of the precise location of the boundary of her land in relation to the east trench below the Lebanon-Walker Dam."

At the reargument the parties presented briefs and were heard orally. After careful consideration we are of the opinion that the complainant has not shown that, in reaching our conclusion concerning the narrow issue stated, we either overlooked or misconceived any material evidence bearing on the question of whether the westerly boundary of her land followed the thread of the east trench, so called, or the easterly bank of said east trench.

Therefore we see no necessity for changing our conclusion, and the cause is remanded to the superior court for further proceedings in accordance with our original opinion.

*Harold H. Winsten,* for complainants.

*Philip M. Hak,* for respondents.