KIWANIS CLUB FOUNDATION, INC., OF LINCOLN, NEBRASKA,
A CORPORATION, ET AL., APPELLANTS, V. LEVI YOST ET AL.,
APPELLEES.

139 N. W. 2d 359

Filed January 14, 1966. No. 36044.

Pierson & Pierson, for appellants.

Ivan A. Blevens, Marti, O'Gara, Dalton & Bruckner, and Robert M. O'Gara, for appellees.

Heard before WHITE, C. J., CARTER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is an action for an injunction restraining the defendants from damaging and destroying a dam and to require them to replace and repair a portion of the dam already destroyed. The district court sustained a demurrer and a later motion to dismiss, and the plaintiffs have appealed.

The plaintiffs alleged that in 1924, a dam was constructed by the Nebraska Gas and Electric Company on the Blue River approximately 1 mile downstream from the property of plaintiff Kiwanis Club Foundation, Inc., which dam replaced a former dam constructed in 1887; that plaintiffs and their predecessors acquired their property and have improved it at great expense, and operated

it as a camp and recreation area for Camp Fire Girls, Inc., for over 40 years in reliance upon the existence of the dam and the water level maintained thereby; that the plaintiffs, by ownership, possession, occupation, and user of their lands, and by prescription, have acquired rights in the existence of the dam and the flow of water and water level maintained by it; that the defendants, who are successors in interest to the builders of the dam, are barred by acquiescence and are estopped from damaging or interfering with such claimed rights; that the dam was used by power companies or districts until 1960 when it was abandoned for power purposes; and that defendants propose to destroy the dam and have damaged and destroyed a portion of it. The plaintiffs pray that the defendants be enjoined from damaging or destroying the dam and that they be required to replace and repair the portion of the dam already damaged and destroyed.

The plaintiffs, with admirable purpose, have carried out on their property a worthwhile project. In doing so, they have had the advantage for over 40 years of the favorable water level situation created by the defendants' dam. They now claim that this use has ripened into a right sufficient to require the defendants to maintain the dam, or at least sufficient to prevent the defendants from destroying it.

The amended petition alleged that the purposes and actions of the defendants are irrational and capricious. These are conclusions, and the court does not pass upon any issues involving malicious or malevolent use of property for the purpose of damaging another.

The issue here has received consideration on many occasions, although the premises and reasoning are greatly divergent. See Annotation, 88 A. L. R. 130. Aside from cases resting on contract, mutual consent, or grant, the theories upon which courts have sustained the right of upper riparian owners to continuation of conditions established by dams below them on the

stream have varied widely. Some courts take the position that the originally artificial condition has become the natural permanent condition which cannot be affirmatively diverted or altered to the damage of other riparian owners. Others proceed on the theory that the upper owner acquires a reciprocal prescriptive right to enjoy the benefit of the improvement. Still others proceed upon the theory of estoppel, or upon the theory that the establishment of the artificial condition constitutes a dedication.

Cases representing the view denying the claims of upstream owners are likewise diverse. The largest group hold that "property rules" are predominant and that the upper owners cannot obtain any prescriptive rights because adverse user is an essential element in the acquisition of prescriptive rights, and is not present in such cases. Others base the decisions on the ground that the owner of the dam was not estopped from changing or destroying the improvement, and may abandon it at any time; and in still others, the distinction is made as to whether the artificial condition is temporary or permanent.

The leading case relied on by the plaintiffs is that of Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 87 Am. S. R. 332, 54 L. R. A. 473, which held: "Where the flow of a stream of water has been diverted from its natural channel, or obstructed by a permanent dam, and such diversion or obstruction has continued for the time necessary to establish a prescriptive right to perpetually maintain the same, the riparian owners along such stream of water, who have improved their property with reference to the change and in reliance on the continuance thereof, acquire a reciprocal right to have the artificial conditions remain undisturbed; and the person who placed the obstruction in the stream, or caused the diversion of the waters, and all those claiming under or through him, are estopped upon principles of equity from restoring the waters to their natural channel or

state to the injury of such riparian owners."

While there is no Nebraska case directly in point, the case of Mitchell Drainage Dist. v. Farmers Irr. Dist., 127 Neb. 484, 256 N. W. 15, expressly rejected the reasoning of Kray v. Muggli, *supra*, and similar cases representing that view. This court, in the Mitchell case, relied on the fact that a dam was not a "permanent" obstruction or diversion, and that there was a clearly distinguishable difference between a prescriptive right obtained for a temporary or specific purpose and one that, from the beginning was, or later became, of a permanent character.

What is referred to as the majority rule is expressed in 93 C. J. S., Waters, § 147, p. 865, and 56 Am. Jur., Waters, § 159, p. 626. See, also, Taft v. Bridgeton Worsted Co., 237 Mass. 385, 130 N. E. 48, 13 A. L. R. 928; Drainage Board v. Village of Homer, 351 Mich. 73, 87 N. W. 2d 72; Hood v. Slefkin, 88 R. I. 178, 143 A. 2d 683.

Construction and maintenance of a dam over a long period of years may well tend to lead persons owning property above the dam to believe that a permanent and valuable right has been acquired, or is naturally present. The very fact that a manmade dam is obviously present, however, is sufficient to charge them with notice that the water level above the dam is artificial as distinguished from natural, and that its level may be lowered or returned to the natural state at any time.

A departure from the "rules of property" in cases such as this of necessity compels a judicial attempt to weigh and balance conflicting, interlocking, and equally appealing equities. There may be many other riparian owners, not parties here, both upstream and downstream, whose interests and equities are not even before the court. The record also does not disclose how much the water level above the dam would be affected, nor to what extent the waters of the river are backed up by the dam, nor the nature and extent of the land covered by the overflow. Under such circumstances, the rules affecting the title to real estate should prevail.

We hold that where a dam has been built for the private convenience and advantage of the owner, he is not required to maintain and operate it for the benefit of an upper riparian proprietor who obtains advantages from its existence; and that the construction and maintenance of such a dam does not create any reciprocal rights in upstream riparian proprietors based on prescription, dedication, or estoppel.

The owner of a dam and the prescriptive right to overflow the land of upper riparian owners may abandon his rights, and may also return the river to its natural state by removing or destroying the dam.

For the reasons stated, the judgment of the district court was correct and is affirmed.

AFFIRMED.