234 A.2d 674.

DONAT GAGNON *et ux. vs.* RAOUL LANDRY *et ux.*

NOVEMBER 1, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action seeking equitable relief and money damages. The plaintiffs base their action on their allegations that drainage and sewage from a septic tank on the defendants' adjoining land has seeped through and penetrated into a well on their land, thereby causing pollution of their water supply. The complaint contains no allegation of negligence. After a hearing before a justice of the superior court sitting without a jury, a judgment was entered denying the plaintiffs' request for injunctive relief and for money damages. The case is here on the plaintiffs' appeal from such judgment.

The facts pertinent to the issues raised by this appeal are as follows. The parties own adjoining parcels of land fronting on the northerly side of Great Road in North Smithfield. The plaintiffs bought their property in 1945; on it there was a house and a well. The defendants bought their property in 1955; it abutted plaintiffs' land on the west. When defendants bought the property there was a septic tank on their land which, prior to 1958 or 1959, discharged through a pipe running southerly under Great Road into a field at some unspecified point. In 1958 or 1959, due to conditions which required some modifications, defendants made certain changes whereby the discharge from their septic tank was diverted westerly away from plaintiffs' land to a new cesspool, which defendants had dug in their front yard. The defendants' testimony is that they had their tank inspected, pumped and cleaned regularly.

In June 1964, plaintiffs noticed a bad taste in the water and in July had it analyzed by the Rhode Island Department of Health. Since the report showed pollution, plain-

tiffs dug a trench on the property line between the parties at a spot near defendants' septic tank. After finding foul water there, they complained to the local health officer, who performed a dye test in defendants' system with their permission, and found that the dye made its way into water collecting at the bottom of the trench. This was in August 1964.

The uncontradicted testimony is that defendants immediately called Mr. Horace M. San Souci, a well expert, who dug up the septic tank, found it ruptured, and replaced it with a cement tank within a few days. It appears that plaintiffs objected to this arrangement and defendants again called Mr. San Souci and he removed the cement tank, dug and cleaned the area around it and filled it with gravel. He then installed a leaching field in defendants' front yard to the westerly side of the cesspool which was already there and connected the house to the cesspool and then to the leach field with solid pipe.

In October and November 1964, further samples of water in plaintiffs' well were tested by the state health department and reported to be polluted. The last of the state reports stated that conditions were such that it was doubtful if the supply could be made satisfactory and that another source of supply should be sought. After this report plaintiffs had a new artesian well built at a cost of $1,397.24. For approximately eight months plaintiffs had to haul water for a distance of about three miles from their home.

In his decision from the bench the trial justice stated that there could be no liability on the part of defendants until they had notice that there was something wrong; that no doctrine of absolute liability was applicable; that there was no nuisance, but even if there were, it would be a private nuisance and there would be no liability until it had been found and defendants had a chance to rectify it; and that as soon as defendants were notified of the situation,

in reliance on the advice of Mr. San Souci, who the trial justice found qualified as an expert, they took action which was reasonable under the circumstances.

The trial justice found that there was no proof that there was any pollution taking place after the changes made by Mr. San Souci and that nothing was done after Mr. San Souci's rectification that affirmatively shows that there was any continuing pollution taking place. He stated that it seemed to him that

> "* * * if there was pollution in the well in the middle of the summer, at the time of the dye test, and that pollution continued, one would expect it to continue unless the well was cleaned out or something else was done in regard to it."

The trial justice did not give any weight to the state health department's report stating that plaintiffs should get a new source of water. He based his finding on this point on the uncontradicted fact that no one from the state department of health had viewed the premises or possessed other information necessary for making such a recommendation. It was for this reason that he concluded that Mr. John C. Clifford, who appeared for the state department of health, was warranted in refusing to state whether he had an opinion as to whether there was a continuing pollution. In the circumstances, the trial justice concluded that plaintiffs were not justified in acting on the state's report to get a new water supply, absent affirmative evidence that plaintiffs had cleaned out their own well after Mr. San Souci had rectified the situation on defendants' land.

He pointed to Mr. San Souci's testimony that a well could be cleaned out successfully if it had not had pollution for more than five months. He stated that there was no proof that plaintiffs' well had been polluted for more than five months and that there was no evidence therefore that the well could not have been successfully cleaned. He con-

cluded that there was no liability on the part of defendants because plaintiffs had failed to prove a continuing pollution.

On the question of damages he stated that even if liability should be found, which he noted he could not find, he questioned how plaintiffs could justify putting in the artesian well. He stated that plaintiffs should have sought expert advice as to whether they could not have cleaned the old well. He also stated that even if it were not possible to clean the well, plaintiffs were not justified in putting in an artesian well without having presented evidence that the circumstances were such that they could not put in a new dug well somewhere else on the premises. Even if the old well were polluted, if the pollution had ceased, there was no reason to believe that another dug well could not have been put in. He concluded that plaintiffs had not sustained their burden of proving that there was then any pollution taking place and therefore he held that they were not entitled to an injunction. Additionally he held that plaintiffs had not proved damages.

On April 6, 1966, a judgment was entered denying plaintiffs' prayers and dismissing the action on its merits. The judgment contained the following findings of fact:

1. That sewage escaping from a ruptured or corroded septic tank located on the defendants' premises polluted a well on the plaintiffs' premises.

2. That the defendants promptly upon notice to them of such condition, rectified same, and no evidence of probative value as to further pollution by such rectified system appears in the record.

3. That plaintiffs failed, in mitigation of damages, to ascertain whether the polluted well might have been cleaned or relocated in a safe place.

The basic issue raised by this appeal is whether a landowner is liable for damages resulting from pollution of a well on an adjoining property owner's land from drainage

and sewage escaping from a ruptured septic tank, in the absence of proof of negligence on the part of the owner of the land on which the septic tank is located.

The plaintiffs rely on *Rylands* v. *Fletcher*, L.R. 3 H.L. 330, which sets forth the doctrine of absolute liability in certain situations. The defendants rely on *Rose* v. *Socony-Vacuum Corp.*, 54 R. I. 411, 416, 173 A. 627, 629, where the court said:

> "* * * that reason and the great weight of authority in this country sustain us in refusing to adopt the rule of absolute liability as stated in *Rylands* v. *Fletcher, supra.*"

On the view we take, there is no necessity to inquire whether the case at bar is controlled by *Rose, supra;* regardless of how the court in *Rose* may have construed *Rylands* v. *Fletcher,* the latter is inapposite here. For discussion of the different interpretations which have been given to *Rylands* v. *Fletcher,* see Prosser on Torts (3d ed.), chap. 14, §77, pp. 519-532; 2 Harper & James, The Law of Torts, chap. XIV, p. 785.

After careful consideration we see no reason why in the circumstances of this case, we should depart from the commonly accepted doctrine of the law of torts that liability is predicated on fault; nor do we see any reason why a greater duty should be imposed upon defendants, under the circumstances, than to act with reasonable care. Nor are we persuaded that any overriding public policy requires more, in the circumstances of this case.

We come now to the question whether there is any evidence in the record to support the trial justice's finding that defendants were not guilty of negligence. We note at the outset that the only evidence of leakage relates to the ruptured septic tank which was on the premises when defendants bought the property and which they had inspected, pumped and cleaned regularly. It will serve no useful pur-

pose to discuss the evidence on this issue in detail; it suffices to say that there is an abundance of competent evidence in the record supporting the trial justice's finding that plaintiffs failed to prove any negligence on the part of defendants. Nor is there any merit in plaintiffs' contention that the trial justice erred in finding that there was no notice to defendants until the local health officer went to them in August 1964.

The plaintiffs next contend that the trial justice erred in finding that the facts of this case were not sufficient to constitute a nuisance. We do not agree. There is no evidence of any unreasonable or unlawful act on the part of defendants with respect to the use of the septic tank, or that any act of theirs caused the septic tank to rupture. See *Hood* v. *Slefkin,* 88 R. I. 178, 187, 143 A.2d 683, 687. But even if there were a private nuisance, defendants would not be subject to legal liability in view of the uncontradicted evidence that as soon as they were notified of the condition they took prompt action to rectify the offensive condition through the services of a qualified drainage expert. As the court said in *Barker* v. *Herbert* (1911), L.R. 2 K.B. 633, 636, 637, 12 B.R.C. 526, 530:

> "* * * In my judgment there can be no liability upon the part of the possessor of land in such a case, unless it is shewn either that he himself, or some person for whose action he is responsible, created that danger which constitutes a nuisance to the highway, or that he has neglected for an undue time after he became, or, if he had used reasonable care, ought to have become, aware of it, to abate or prevent the danger or nuisance. * * *"

We find no error in the trial justice's finding of fact that there was no continuing pollution of plaintiffs' well after defendants rectified their sewage system. Mr. San Souci testified that after he modified defendants' system, it could not pollute plaintiffs' well. There is evidence in the record

that plaintiffs' well, having been polluted, would remain so for a certain period of time, even though the source of pollution was removed. But there is no evidence that plaintiffs ever cleaned their well after the pollution. In fact plaintiffs presented no evidence of any kind to show that there was a source of pollution on defendants' land after the ruptured septic tank was removed. In the circumstances, the trial justice was warranted in placing no weight in the state department of health's last report and in concluding that plaintiffs were not justified in taking the action they did in reliance on such report.

The plaintiffs' contentions, in point V of their brief, that the trial justice abused his discretion in not recognizing certain witnesses as experts, are without merit and require no further discussion.

In view of our conclusion on the question of liability, we do not reach the question of damages. But even if we did, it would not help the plaintiffs, because in our judgment, on this record, the trial justice correctly held that the plaintiffs neither took proper action in mitigation of damages, nor presented proper evidence to prove damages.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*John J. Cappelli,* for plaintiffs.

*Gerald A. Oster, Irving N. Espo, Thomas F. Fay,* for defendants.