Sandra D. **GREEN** and Thomas H. Green, Plaintiffs,

v.

**CITY OF WILLIAMSTOWN, Defendant.**

Civ. A. No. 93–43.

United States District Court, E.D. Kentucky.

March 24, 1994.

---

· Steven L. Beshear and Lynn C. Stidham, Stites & Harbison, Lexington, KY, for plaintiffs.

David A. Nunery, Campbellsville, KY, for defendant.

## MEMORANDUM OPINION

BERTELSMAN, Chief Judge.

### I. INTRODUCTION

This is an action brought by landowners seeking an injunction to prevent the City of Williamstown ("City") from withdrawing water from Lake Williamstown and seeking monetary damages. Plaintiffs base their federal claims on both federal question and diversity jurisdiction. The court has granted the City of Williamstown's motion for summary judgment (Doc #31), and enters the following Opinion.

### II. FACTUAL BACKGROUND

The following facts are undisputed: In the 1950's, the Commonwealth of Kentucky Department of Fish & Wildlife Resources (Commonwealth) and the City combined their efforts to create Lake Williamstown, an artificial, non-navigable lake. To create the lake, the Commonwealth and City decided to build a dam and flood certain parcels of land. The Commonwealth received express flowage ·easements from some property owners, and instituted condemnation proceedings against others. (Doc. #32, pp. 1–3).

Among those who granted an express flowage easement were Calvert and Thelma Bennett, who did so on April 6, 1954. The Bennett easement stated:

"For and in consideration of One Dollar ($1.00) cash in hand paid and other valuable considerations, the receipt of which is hereby acknowledged, (We) Thelma Bennett and Calvert Bennett, hereby give and grant to the Commonwealth of Kentucky for the use and benefit of the Department of Fish and Wildlife Resources the exclusive right to construct a dam, on or adjoining my property, in East Fork Goose Creek.

"It is agreed that I shall release forever the Commonwealth of Kentucky and the

Department of Fish and Wildlife Resources and other departments of the State Government from all claims for damages which may occur as a result of said dam built in Goose Creek. I further agree that employees of the Department of Fish and Wildlife Resources shall be given rights of egress and ingress over my property as might be required for construction and maintenance of said dam, and fishermen may at all times fish in a usual and legal manner, in the pools created by the dam.

"I (We) do further grant to the Department of Fish and Wildlife Resources and the Commonwealth of Kentucky an easement over my lands to be used by fishermen and other persons enjoying the facilities of the dam or the pool created thereby. . . .

"In consideration of the foregoing the Department of Fish and Wildlife Resources does by the acceptance of this easement bind itself, its successors and assigns as follows:

"(1) The Department in constructing the lake for which this easement was given shall remove from the proposed lake all timber measuring ten (10) inches or more in diameter six (6) inches above the ground and place such timber on the owner's property above the high water line. . . .

"(2) The Department agrees that water from the lake to be constructed by the Department shall be made available to the abutting landowner, or owners, for use for all farm purposes, including the irrigation of land drained by the lake."

(Doc. # 33, Ex. 1). Four months later, the Bennett easement was assigned from the Commonwealth to the City. *Id.,* Ex. 2.

On October 4, 1954, the City adopted Ordinance Number 7, which provided for the construction of the dam "for the purpose of impounding water and creating a lake or supplemental reservoir to furnish water to the City of Williamstown, Grant County, Kentucky." On October 5, 1954, this Ordinance was published in The Grant County News. (Doc. # 32, Ex. # 2–3). Between 1956 and 1978, the City passed additional ordinances referring to using the Lake as a public water supply. These ordinances were published in the Grant County News and are of public record at the Grant County Courthouse. *Id.,* pp. 9–10.

Construction of the dam was completed in the 1950's, and in 1963 the City constructed a water treatment facility on the lake. A series of improvements to the facility in 1976 gave the plant the ability to extract up to 1.5 million gallons per day. *Id.,* p. 10 & Ex. 1.

In August 1969, Sandra and Thomas Green bought two lots in what is known as the Bennett Subdivision. These parcels include not only property abutting the lake, but also a portion of the lake bed itself. (Doc. # 33, pp. 2, 19).

In 1979, the City received a permit to withdraw 1.5 million gallons per day from the lake. The Greens noticed that the water levels of the lake fluctuated during the recreational season, creating periods when the shoreline was unusable. However, they did not object to the City's removal of the water at that time. (Doc. # 32, Ex. 15–16; Doc. # 33, pp. 13, 19–20).

In 1992, the City requested that the Kentucky Department of Local Government release federal funds for additional improvements and expansion of the water treatment facility. The proposed expansion will double the amount of water removed from the lake (from 1.5 million gallons to 3 million gallons per day). (Doc. # 33, pp. 2–3).

Instead of pursuing remedy in state court, the Greens filed this action seeking injunctive relief, and seeking damages for temporary and permanent diminution of the value of their property. They assert that the removal of water from the lake constitutes a taking without just compensation in violation of the Fifth and Fourteenth Amendments, and a violation of their property rights under Kentucky law. They claim that the Bennett easement does not expressly allow the City to withdraw water from the lake and reduce the water level. Alternatively, they argue that, even if the City has that right through a prescriptive easement, the City cannot expand this easement to effectively withdraw twice as much. The City moved for summary judgment arguing that the Greens do

not have a property interest, and the court previously granted the motion noting that this opinion would follow.

## III. ANALYSIS

### A. Federal Claims Are Premature

 The Greens' taking claims are premature. If a state affords an adequate procedure for securing just compensation, property owners cannot pursue a federal claim until after they have invoked the state procedures and been refused just compensation. Until the property owners pursue state remedies, their case is not ripe. If a claim is unripe, federal courts lack subject matter jurisdiction. *E.g., Williamson County Regional Planning Comm'n, v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985); *Bigelow v. Michigan Dept. of Nat'l Resources,* 970 F.2d 154, 157 (6th Cir.1992); *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1214–15 (6th Cir.1992). It is undisputed that Kentucky provides such remedies and the Greens did not pursue a state court action for inverse condemnation.[1] *E.g., Keck v. Hafley,* 237 S.W.2d 527 (Ky.1951) (authorizing inverse condemnation actions against the state). Additionally, the Greens have not pursued a state administrative hearing, challenging the City's permit to withdraw the water. KRS §§ 151.182 to 151.186. Thus, the Greens' taking claim is not ripe for review and must be dismissed.

### B. Kentucky Does Not Recognize Prescriptive Property Rights In Water Levels Of An Artificial Lake

The Greens' remaining cause of action asserts that the City has violated their property rights under Kentucky law. This court has diversity jurisdiction over this claim.

 The Greens do not contest the fact that the Bennett easement enables their property to be flooded. Rather, they contend that, since the Bennett easement did not expressly grant the Commonwealth any right to withdraw the water for use as a water supply, the City is violating the ease-

ment by withdrawing the lake water for public consumption. (Doc. # 33, p. 2).

Even if the Bennett easement did not grant the City permission to use the water, the City received the necessary permit to withdraw the water from the lake. Under KRS § 151.120, all water occurring in any stream, lake, ground water, or other body of water in the State of Kentucky which may be applied to any useful and beneficial purpose is declared to be public water, subject to control or regulation for the public welfare. Furthermore, no city has the right to withdraw water unless the city has been granted a permit by the State. KRS § 151.140. It is undisputed that the City of Williamstown received a permit to withdraw 1.5 million gallons per day from the Lake, and the Greens do not contend that the City has violated this permit. (Doc. # 32, Ex. 15–16). Therefore, under Kentucky law, the City can withdraw water from the lake, even if the easement did not grant the City permission to do so.

Alternatively, the Greens argue that, even if the City has the right to withdraw water from the lake, the City has a duty to maintain the existing water level on their property. Despite the fact that the City owns the dam which created the lake, the Greens claim that their use and reliance upon the water level ripened into a property right by reason of adverse use. (Doc. # 33, pp. 8–20). This argument is also without merit.

 The question of whether a dam owner who creates an artificial lake has a duty to maintain the water levels for the benefit of upper riparian owners is a novel issue under Kentucky law. Under Kentucky law, absent agreements to the contrary, the owner of land beneath an artificial lake can utilize the water above his land. *Rutledge v. Young,* 646 S.W.2d 349, 350 (Ky.Ct.App.1982). While the Supreme Court of Kentucky has expressly decided that the City does not have exclusive rights to the use of the lake water for commercial fishing purposes, *City of Williamstown v. Ruby,* 336 S.W.2d 544 (Ky. 1960), the question of whether Kentucky law imposes a duty upon dam owners, who are

---

1. Indeed, this action is the action for inverse condemnation.

holders of a flowage easement, to maintain existing water levels has not been decided by a Kentucky court. Where the highest court has not spoken, a federal court must ascertain from all available data what the state law is and apply it. *E.g., Ray Indus. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir.1992). Therefore, this court, in deciding what the Supreme Court of Kentucky would do, has looked to other states to decide what law Kentucky would apply.

In an analogous case, the Nebraska Supreme Court addressed the issue of whether the owner of property adjacent to an artificial lake had property rights in the water level. *Kiwanis Club Found., Inc. v. Yost*, 179 Neb. 598, 139 N.W.2d 359 (1966). In *Yost*, a dam had been constructed and maintained, creating an artificial lake since 1887. The plaintiffs and their predecessors had acquired and improved their property at great expense and, for over forty years, operated it as a camp and recreation area for the Camp Fire Girls. However, in the 1960's, the defendants acquired the dam and began to destroy it.

In its decision, the Supreme Court of Nebraska reviewed and rejected various theories upon which a minority of courts had sustained the right of upper riparian owners to continuation of conditions established by dams below them.

"Some courts take the position that the originally artificial condition has become the natural permanent condition which cannot be affirmatively diverted or altered to the damage of other riparian owners. Others proceed on the theory that the upper owner acquires a reciprocal prescriptive right to enjoy the benefit of the improvement. Still others proceed upon the theory of estoppel, or upon the theory that the establishment of the artificial condition constitutes a dedication."

*Id.* 139 N.W.2d at 360.

Instead, the Nebraska Supreme Court followed the majority rule, holding that the dam owner had a right at any time to take down its dam or to cease to impound the water for any reason which seems to it sufficient. *Id.* 139 N.W.2d at 361 (*citing Taft v. Bridgeton Worsted Co.*, 237 Mass. 385, 130 N.E. 48, 50 (1921)).

Under the majority rule, the mere fact that a property owner has used or improved his property with reference to an artificial lake created by another's dam does not confer the property owner with property rights in the continued water level of the lake. *See e.g., Yost*, 139 N.W.2d at 361; *Hood v. Slefkin*, 88 R.I. 178, 143 A.2d 683 (1958); 78 AM.JUR.2d *Waters* § 205 (1975).[2] As stated by the Nebraska Supreme Court:

"Construction and maintenance of a dam over a long period of years may well tend to lead persons owning property above the dam to believe that a permanent and valuable right has been acquired, or is naturally present. The very fact that a manmade dam is obviously present, however, is sufficient to charge them with notice that the water level above the dam is artificial as distinguished from natural, and that its level may be lowered or returned to the natural state at any time."

*Yost*, 139 N.W.2d at 361. This court finds the rationale of the Nebraska Supreme Court persuasive, and concludes that the Kentucky

**2.** 78 AM.JUR.2d *Waters* § 205, pp. 650–1, states:

"Ordinarily, the proprietor of a dam has an unqualified right to remove, alter, or abandon it where the rights or interests of other persons are not affected by such action. Moreover, the rule supported by most courts is that the mere fact that one has used or improved his property with reference to the artificial condition created by the maintenance of a dam by another, so that he would suffer loss or inconvenience by the removal or alteration of such dam, confers upon him no right to the continued maintenance thereof for his benefit, or, at least, imposes upon the proprietor of the dam no affirmative obligation with respect to such maintenance. It has been

held that in the absence of any covenant to keep a lake at a certain level by the maintenance of a dam, the owner of the dam may abandon and destroy it. The owner of a dam who has the prescriptive right to overflow the land of upper riparian owners has been held to have the right to abandon his rights and to return the watercourse to its natural state by removing or destroying the dam. There is also authority that the owner of a dam across a watercourse is not precluded by the doctrines of prescription, dedication, or estoppel from lowering the level of the water backed up between the limits of the artificial high-water mark and the natural level of the watercourse."

Supreme Court would also adopt the majority rule.

Here, there is no dispute that the City is the owner of the dam which created the lake. Since the City could reduce the water level by abandoning the dam, it follows that the Greens do not have a property right in preventing the City from reducing the water level to a lesser degree. Thus, the Greens do not have a cause of action against the City for the fluctuating water levels brought about by the City's withdrawal of the water. Therefore, summary judgment was granted in this case.