## A00A2471. AJAYI v. WILLIAMS.
(546 SE2d 537)

SMITH, Presiding Judge.

This appeal involves the application of OCGA § 9-3-97.1, which provides for tolling the statute of limitation if medical records properly sought in preparation for a possible medical malpractice action are not furnished in a timely manner. Dr. Rex O. Ajayi appeals from the trial court's order tolling the statute of limitation under OCGA § 9-3-97.1, thereby enlarging the time period for Herman Williams to bring a malpractice action against him.[1] In his sole enumeration of error, Ajayi contends the trial court erred both in finding that Williams strictly complied with the statutory requirements and in tolling the statute beyond the date on which Ajayi alleges he informed Williams that he had provided all medical records in his possession. We conclude that the trial court correctly ordered the statute tolled,

---

[1] The record does not show that a medical malpractice action has been filed as yet. The trial court's ruling was made on a petition filed under OCGA § 9-3-97.1 to compel the supplying of medical records.

because Williams had met all requirements of the statute and Ajayi had not furnished the copies or an appropriate letter of response prior to the petition being filed. We also find, however, that Ajayi eventually complied with OCGA § 9-3-97.1 and the trial court therefore erred in finding that Ajayi had not yet complied with the statute at the time of its order. We therefore reverse that portion of the trial court's order extending the tolling of the statute for an indefinite period until such time in the future that Ajayi complies. Instead, we conclude that the statute should be tolled for 155 days, the period during which Ajayi failed to comply with the statute.

OCGA § 9-3-97.1 provides for tolling the limitation period for bringing an action for medical malpractice when five factors are present: (1) An injured person or his or her attorney makes a request to a health care provider by certified or registered mail or, in the language of the statute, "statutory overnight delivery," return receipt requested, for medical records in the provider's custody or control to which the injured person is legally entitled that relate to the injured person's treatment; (2) a properly executed document authorizing the release of the requested information is enclosed; (3) the request expressly states that the records should be mailed to the injured person or his or her attorney by certified or registered mail or statutory overnight delivery, return receipt requested, and that the records are needed for possible use in a medical malpractice action; (4) all fees charged by the provider for compiling, copying, and mailing the records are paid promptly; and (5) either the records or a letter stating that the provider does not have the requested medical records in his or her custody or control has not been received within 21 days of the date of receipt of the request.

The record shows that on September 24, 1999, Williams's counsel sent such a request to Ajayi. The request stated that counsel had been retained to prosecute a potential malpractice action and requested that "certified copies of all medical records, to include but not limited to videos and x-rays, in your possession, custody or control" be sent by certified mail to the attorney's office. The letter stated that a check for $50 was enclosed to cover costs and referenced both Williams and the dates of service of "3-17-98 (and any other visits thereafter)." The request was sent certified mail, return receipt requested, and a medical release form was enclosed. The record shows that Ajayi received the letter on September 27, 1999.

On January 17, 2000, another certified letter was mailed to Ajayi by Williams's attorney. This letter indicates that records requested in September had not yet been received and that "further action" would be taken if they were not received within "six (6) working days."

On March 16, 2000, one day before the limitation period was to expire in Williams's potential malpractice action against Ajayi, Wil-

liams filed this petition to compel production of the records. In the petition, Williams alleged that Ajayi had deposited the $50 check but had not furnished the requested records. Williams prayed, among other things, that the statute of limitation be tolled and that Ajayi be ordered to furnish the applicable records.

In response, Ajayi sought dismissal of the petition on the ground that Williams had not complied with the requirements of OCGA § 31-33-2[2] or § 9-3-97.1. While maintaining that Williams had not complied with the applicable statutes, Ajayi also claimed that after he received the January letter he "provided a complete copy of his records pertaining to petitioner to petitioner's attorney" and had not omitted anything. He admitted that he saw Williams on March 17, 1998, but asserted that his office "generated no record relating to that visit other than those entries which have already been voluntarily provided" to Williams's attorney, which consisted of billing records only.

By way of explanation, Ajayi stated that his office employed computer software designed to produce notes automatically for certain procedures, which notes were then pasted into the patient's chart, making notes handwritten or dictated by the doctor unnecessary. The procedure performed on Williams on March 17, 1998, apparently was one covered by this software. Ajayi claimed his office staff recollected that this software had malfunctioned at one time, that the March 17, 1998 visit by Williams "apparently occurred within that time period," and that "there is no separate note other than the billing entry for that date." Ajayi also noted that the hospital record indicates the procedure performed on March 17, 1998, and that the hospital record and all subsequent office records were provided to Williams's attorney "well before the filing of this petition."

On May 23, 2000, over two months after the limitation period otherwise would have expired the trial court, after hearing argument, entered an order tolling the statute of limitation for the indefinite period "from October 19, 1999 until delivery by" Ajayi of a letter of response stating he does not have custody or control of the March 17, 1998 record. The trial court found that after receiving the January 17, 2000 letter, Ajayi furnished to Williams all medical records covering visits after March 17, 1998, but "no record for the date of service, March 17, 1998[,] was provided nor was a letter of response provided stating that Dr. Ajayi does not have custody or control of the medical record for the date of March 17, 1998."

1. The trial court correctly noted that OCGA § 9-3-97.1 provides that its terms must be strictly complied with and strictly construed.

---

[2] We note that OCGA § 31-33-2 requires only that a patient make a "written request."

OCGA § 9-3-97.1 (d). Ajayi contends that Williams is not entitled to relief because he did not comply with the requirements set forth in OCGA § 9-3-97.1.

(a) Ajayi appears to argue that Williams's request failed to comply with the statute because the language of the request under the heading referencing the date of service ("all medical records, to include but not limited to videos and x-rays, in your possession, custody or control") did not exactly correspond to the language identifying the records in the authorization to release records ("any and all medical, professional opinion and reports, data and information relating to an injury received by the undersigned on the 17th day of March, 1998"). But the statute does not prescribe exact language for identifying the records sought, and using slightly different language in the request and the authorization to release records did not change the request itself. It is still clear which records were sought.

(b) Ajayi also points out that the statute requires the request for medical records to state expressly that the records should be mailed by certified or registered mail or statutory overnight delivery, "return receipt requested." Because Williams's requests did not include the phrase "return receipt requested," Ajayi argues that Williams's requests were invalid. We find this argument unpersuasive.

It is true that whenever strict adherence with a statute's terms is required, substantial compliance generally has been deemed insufficient by this court. See, e.g., *U. S. Filter Distrib. Group v. Barnett*, 241 Ga. App. 759 (526 SE2d 912), aff'd, 273 Ga. 254 (538 SE2d 739) (2000) (time limitation in materialman's lien); *Swanigan v. Leroux*, 240 Ga. App. 550-551 (1) (524 SE2d 244) (1999) (service under nonresident motorist act); *Kim v. Dept. of Transp.*, 235 Ga. App. 480, 481-482 (2) (510 SE2d 50) (1998) (ante litem notice under tort claims act).

But this court has made exceptions to the general rule. See, e.g., *Ga. Ports Auth. v. Harris*, 243 Ga. App. 508 (533 SE2d 404) (2000). In *Harris*, the claimant was required to give ante litem notice under the Georgia Tort Claims Act, which provides that the notice must be sent certified mail. The notice was sent by Federal Express, but receipt was admitted by the addressee agency. This court rejected the agency's contention that the suit should have been dismissed because the plaintiff failed to comply with the statute requiring mailing by certified mail, return receipt requested. We held that the requirement of return receipt

can only have been intended to protect potential claimants, by providing proof of delivery of the required notice, and to simplify the trial court's determination of whether the claimant had complied with OCGA § 50-21-26 (a) (2). In a case such as this, where actual receipt of the notice is admit-

> ted . . . , the doctrine of strict compliance does not require us to use the receipt provision to harm the very party it was designed to benefit, namely, one with a tort claim against the state.

Id. at 512 (1) (b).

In this case, a careful examination of the statutory language leads us to conclude that the requirement that the request expressly state the records must be sent "return receipt requested" must be for the protection of the patient making the request, to ensure receipt of the records. While a requirement that the records *be sent* certified mail, return receipt requested, would also protect the provider, ensuring proof that the records were sent and received, the same is not true of a requirement that the *request state* this requirement. Moreover, the purpose of the entire statute is the protection of the *recipients* of health care who seek their medical records, not the protection of the providers. Here, as in *Harris*, it is undisputed that the March 17, 1998 record was never sent and therefore never received. Application of the strict construction doctrine would reward the provider for subverting the purpose of the statute, which is to facilitate the timely provision of documentation to persons who suspect they may have been injured by the provider.[3] Therefore, as in *Harris*, supra, we decline to use the doctrine of strict compliance "to harm the very party it was designed to benefit." Id.

(c) Ajayi maintains that Williams failed to comply with the statute because he requested "certified copies" of the records and this requirement is not included in the statute. We agree with the trial court that because compliance with this request is not mandated by the statute, it is merely an *additional* request, with whose terms the doctor was not required to comply. But nothing in the statute prohibits such a request, and Williams's request cannot be deemed noncompliant simply because it included a request not mandated by the statute.

The trial court correctly ruled that Williams's request complied with OCGA § 9-3-97.1.

(d) Ajayi asserts that tolling the statute should be barred by the doctrine of laches.[4] "A court of equity may bar a complaint based on

---

[3] Ga. L. 1989, p. 419, provides that the statute's purpose, as amended, is to toll the period of limitation for filing medical malpractice actions when "the injured person is delayed in obtaining medical information from a health care provider."

[4] Although laches is an equitable doctrine, "many of the substantive principles of equity — including (but not limited to) undue influences, mistake, unjust enrichment, fraud, and equitable defenses that include estoppel and laches — have worked themselves into the law to the extent that there is nothing particularly 'equitable' about them." (Punctuation and footnote omitted.) *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 749 (4) (524 SE2d 464) (1999).

laches when the lapse of time and the claimant's neglect in asserting rights result[ ] in prejudice to the adverse party." *Hall v. Trubey*, 269 Ga. 197, 199 (1) (498 SE2d 258) (1998).

> Laches is peculiarly a factual defense, the resolution of which will rest in the sound discretion of the trial judge, sitting as a chancellor in equity, and without the intervention of a jury. In determining the viability of a laches defense, the trial court should consider the length of the delay, the sufficiency of the excuse, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the plaintiff or defendant possessed the property during the delay. The defendant must show prejudice from the delay.

(Citations and punctuation omitted.) *McGhee v. Johnson*, 268 Ga. 731, 732 (492 SE2d 893) (1997), overruled in part on other grounds, *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 749, n. 20 (524 SE2d 464) (1999).

Applying these factors, given the lack of prejudice to Ajayi, as well as the short delay and the fact that no evidence was lost, we conclude that the trial court did not abuse its discretion in finding that Williams was not guilty of laches.

2. We must disagree with the trial court's finding that as of the date of its order, May 23, 2000, Ajayi had not yet delivered a letter of response to Williams stating that he did not have custody or control of the record for the date of March 17, 1998. The record includes a letter from Ajayi's attorney to Williams's attorney, dated March 22, 2000, enclosing Ajayi's response to the petition. The response recites that Ajayi gave Williams "a complete copy of his records pertaining to petitioner" and denied "omitting any matter from the records sent to petitioner's attorney, specifically including any record relating to a March 17, 1998 visit." The response further states that Ajayi's "office generated no record relating to that visit other than those entries which have already been voluntarily provided to petitioner's attorney," that Ajayi had provided Williams with "a complete and current copy of his office records prior to the filing of this petition," and that Williams's attorney was "in possession of all records involving petitioner's March 17, 1998 visit to respondent and has been prior to the filing of his petition." In addition, Ajayi provided an explanation for the absence of notes of this visit from his office records, and although they were not part of his office's records, he enclosed copies of the

hospital records covering the day of the procedure and subsequent days. The statute requires no particular wording in a letter of response. We find that in combination, Ajayi's response, his letter, and the hospital records clearly satisfy the statute's requirement for a "letter of response stating that the provider does not have custody or control of the medical records."

Because the response required by statute was provided on March 22, 2000, we reverse that portion of the trial court's order tolling the statute of limitation "until delivery by respondent" of the required letter. Instead, we hold that the statute of limitation was tolled only between the dates of October 19, 1999, and March 22, 2000.[5] The period of time during which Williams may file a malpractice action is thereby extended by 155 days, giving him 156 days to file such an action once the statute of limitation again begins to run.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur. Phipps and Mikell, JJ., disqualified.*

DECIDED FEBRUARY 28, 2001.

*Watson, Spence, Lowe & Chambless, Dawn G. Benson, Charles K. Wainright II*, for appellant.
*Brimberry, Kaplan & Brimberry, Jerry W. Brimberry, Jr.*, for appellee.

---

[5] Of course, in a civil case the limitation period is also tolled during the pendency of this appeal. *Hardin Constr. Group v. Fuller Enterprises*, 233 Ga. App. 717, 720 (1) (505 SE2d 755) (1998) (physical precedent only); *Yield, Inc. v. City of Atlanta*, 152 Ga. App. 171, 173 (1) (262 SE2d 481) (1979).