A02A1126. DILLARD et al. v. BISHOP EDDIE LONG
MINISTRIES, INC. et al.
(574 SE2d 544)

RUFFIN, Presiding Judge.

Bishop Eddie Long Ministries, Inc. and Richard and Susan Adle (collectively "homeowners") own residential property on Hunt Valley Lake, which is formed by a dam. The property on which the dam sits is owned by Hunt Valley, Inc., a corporation whose shareholders include G. Douglas Dillard, John Cowart, and Robert Rutland (collectively "Hunt Valley"). In February 2001, Hunt Valley began demolishing the dam, which caused the lake to partially drain. The homeowners, who claim an easement in the dam, filed a complaint seeking injunctive relief and damages. Pending final resolution of the homeowners' claims, the trial court granted an interlocutory injunction, ordering Hunt Valley to refrain from further demolishing or destructing the dam. In five enumerations of error, Hunt Valley appeals this order.[1] For reasons that follow, we affirm.

---

[1] Hunt Valley timely appealed the order to the Supreme Court, which transferred the case to this Court.

The record demonstrates that, in the 1950s, Robert Rutland's grandfather built the dam on his property, which created a lake.[2] At some point, Hunt Valley acquired the dam and property surrounding the lake, which was then turned into a small subdivision including four lakefront residential lots.

In March 1984, the Adles paid a premium price for one of the lakefront lots.[3] The warranty deed referenced a plat, which mentioned the lake. Three of the lots, including one of the lakefront lots, were purchased by Dillard, a Hunt Valley shareholder, who subsequently sold the lots to Bishop Eddie Long Ministries for over $1 million. Dillard's warranty deed referenced a plat, which depicted the property abutting a lake. In 2000, Bishop Long spent $10,000 to $15,000 to renovate his property to improve his view of the lake.

In the early 1990s, the Georgia Department of Natural Resources (DNR) inspected the dam, noting that the principal spillway pipe for the dam was rusted and there appeared to be active seepage. The DNR classified the dam Category I, determining that a breach of the dam could lead to loss of life because of a house that had been built downstream. Hunt Valley unsuccessfully appealed the classification of the dam and disputed ownership of the dam. Dillard, who was both a shareholder of Hunt Valley and a property owner, suggested that property owners contribute to the cost of repairing the dam — estimated at over $180,000, but the property owners refused. The downstream house subsequently burned down, and the dam was reclassified Category II.

At some point, the homeowners took steps to discover the cause of the seepage, which included hiring scuba divers to examine the dam, placing cement in the overflow pipe, and installing a siphon overflow system. In 1991, Helena Dailey, a resident of the community, saw two unidentified men hammering on the standpipe attached to the spillway. Within days, a major leak developed in the dam, draining most of the water from the lake.

There is conflicting evidence regarding the water level of the lake after 1991. According to Hunt Valley, "[t]he lake remained

---

[2] We note that the appellants support their factual assertions with citations to the trial court's order rather than the evidence, itself. We question the propriety of this practice. See *Voxcom, Inc. v. Boda*, 221 Ga. App. 619, 620 (472 SE2d 155) (1996) (party required to cite transcript). However, we will treat such assertions, which are not contradicted by the appellees, as agreed-upon facts in order to address the merits of the appeal. See *Keith v. State*, 218 Ga. App. 729 (463 SE2d 51) (1995). To the extent that there is additional evidence, which might support appellants' contention, we will not cull the record to find such support. See *Sparti v. Joslin*, 230 Ga. App. 346, 347 (2) (496 SE2d 490) (1998).

[3] It appears that a portion of the land was initially owned by a company called Monteagle, Inc., which has been dissolved, but that Hunt Valley, which owned a portion of the land, marketed the community.

empty except for a small pool of water for the next eight years." The homeowners, on the other hand, point to evidence that the water level fluctuated over the years, including an aerial picture that shows the lake was substantially full in 1995.

In March 2000, the appellee homeowners along with other property owners hired a contractor to pump cement into the failed spillway pipe, which sealed the leak and caused the lake to refill. The homeowners admittedly did not seek permission from Hunt Valley prior to plugging the spillway.

In January 2001, Hunt Valley agreed to sell land, which included the dam and a portion of the lake bed, to Melbourne, Inc., for development of a subdivision. Shortly thereafter, Hunt Valley had a notch cut in the top of the dam and began pumping water from the lake. The homeowners sought to stop the drainage and filed the instant complaint in the Superior Court of DeKalb County, seeking injunctive relief, punitive damages, and attorney fees. Pending resolution of the claim, the homeowners also sought an interlocutory injunction, prohibiting Hunt Valley from further demolition of the dam.

After the homeowners filed suit, heavy rains caused the lake to partially refill. The DNR reclassified the dam as Category I. In an order, the DNR directed Hunt Valley, as the owner of the dam, to provide a minimum of seven feet between the lake surface and the notch cut in the dam until the dam either was repaired or breached. On June 11, 2001, the trial court granted the homeowners' motion for temporary relief, enjoining Hunt Valley from further demolition of the dam and ordering Hunt Valley to comply fully with the DNR order, which the trial court incorporated into its own order. Hunt Valley appeals, challenging the trial court's grant of the temporary injunction.

Initially, we note that "[t]he purpose of an interlocutory injunction is to preserve the status quo of the parties pending a final adjudication of the case."[4] As a general rule, a trial court enjoys broad discretion in determining whether to grant such injunction.[5] "Where the trial court, in ruling on an interlocutory injunction, makes findings of fact based upon conflicting evidence, this court will not disturb the ruling as an abuse of discretion unless the denial or granting of the injunction was based on an erroneous interpretation of the law."[6]

1. In its first enumeration of error, Hunt Valley contends that the trial court erred in granting injunctive relief, which "does not maintain the status quo, but rather prevents [Hunt Valley] from restoring the lake to the level which existed prior to the unlawful

---

[4] (Citation and punctuation omitted.) *Penland v. Corlew*, 248 Ga. App. 564, 566 (1) (547 SE2d 306) (2001).

[5] See *Covington v. D. L. Pimper Group*, 248 Ga. App. 265, 266-267 (546 SE2d 37) (2001).

[6] (Footnote omitted.) Id. at 267.

actions of the [homeowners] of sealing the drain." We disagree.

Hunt Valley argues that, because the homeowners acted unlawfully in sealing the dam, the status quo should relate to the time before the dam was sealed, in which case its draining of the lake merely preserved the status quo. However, there is a factual dispute as to whether the homeowners, in fact, acted unlawfully. Indeed, the crux of the homeowners' complaint against Hunt Valley is that they had a property right in the dam, which Hunt Valley is seeking to destroy by draining the lake. Under these circumstances, we find no abuse of discretion in the trial court's issuing an injunction to maintain the status quo.[7]

2. In its second enumeration of error, Hunt Valley asserts that the trial court erred in concluding that a property owner has no right to lower the level of or drain a dammed lake, which is situated on its property. Hunt Valley cites cases from other jurisdictions to buttress its argument that "a lower riparian dam owner is not required to maintain a dam for the benefit of upper riparian owners."

As the trial court noted in its order, "[w]hen a developer sells lots according to a subdivision plat, which has a lake area designated on it, the purchasers acquire an irrevocable easement in that [lake], with which the developer may not interfere."[8] Moreover, "[a]n easement acquired in this manner is considered an express grant, and is an irrevocable property right."[9] This is so because it is presumed that the purchasers have paid a premium for the property.[10]

The record demonstrates that the warranty deeds conveying the property to the homeowners referenced a plat, which either referenced the lake or depicted the lake as part of the subdivision. Under these circumstances, we cannot say that the trial court erred in concluding that the homeowners have sufficient interest in the property to warrant a temporary injunction, preventing Hunt Valley from destroying such interest.[11] The foreign cases cited by Hunt Valley do not require a different result. None of those cases involves a dominant landowner that profited from developing a community surrounding a lake and then sought to remove the lake.[12]

---

[7] See *Ebon Foundation v. Oatman*, 269 Ga. 340, 344 (3) (b) (498 SE2d 728) (1998).

[8] (Punctuation omitted.) *Higgins v. Odom*, 246 Ga. 309-310 (271 SE2d 211) (1980).

[9] *Walker v. Duncan*, 236 Ga. 331, 332 (223 SE2d 675) (1976).

[10] See id.

[11] See *Brown v. Tomlinson*, 246 Ga. 513, 514 (272 SE2d 258) (1980) (in certain instances, it would be unfair to allow drainage of a lake that had existed for over 20 years).

[12] See *Kiwanis Club Foundation v. Yost*, 179 Neb. 598 (139 NW2d 359) (1966) (where dam built for convenience of owner, owner not required to maintain dam for upper riparian property owners); *Hood v. Slefkin*, 88 R.I. 178 (143 A2d 683) (1958); *Drainage Dist. No. 2 of Snohomish County v. City of Everett*, 171 Wash. 471, 479-480 (18 P2d 53) (1933) ("[a] right created for the benefit of the dominant owner its exercise by him can not operate to create a new right for the benefit of the servient owner") (punctuation omitted).

3. In a related enumeration of error, Hunt Valley contends that the trial court erred in concluding that the homeowners "are entitled to an irrevocable easement" to the lake and, thus, the dam. Again, we disagree. In *Walker v. Duncan*, the Supreme Court ruled that "[i]t is well-established that where a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use. An easement acquired in this manner is considered an *express grant*, and is an irrevocable property right."[13] Hunt Valley makes no attempt to distinguish this case. It is axiomatic that this Court is bound by the precedent of the Supreme Court.[14] Accordingly, we discern no error in the trial court's conclusion.

4. Hunt Valley asserts that the trial court erred in granting the temporary injunction because the underlying claims are barred by the statute of limitation. Under OCGA § 9-3-30, the statute of limitation for damage to property is four years. According to Hunt Valley, the lake initially was drained in 1991, approximately nine years before the homeowners filed suit. Here, however, the homeowners alleged they were injured in 2001 when Hunt Valley cut a notch in the dam as a first step to draining the lake completely. As the homeowners filed suit in March 2001, they clearly did so within the statute of limitation. It follows that this claim of error presents no basis for reversal.

5. In a related enumeration of error, Hunt Valley maintains that the homeowners' claims are barred by laches. "A court of equity may bar a complaint based on laches when the lapse of time and the claimant's neglect in asserting rights result in prejudice to the adverse party."[15] A trial court enjoys discretion in determining whether, under the facts of the case, laches applies, and this Court will not disturb such determination absent abuse of discretion.[16] We find no abuse of discretion here.

*Judgment affirmed. Barnes, J., and Pope, Senior Appellate Judge, concur.*

DECIDED OCTOBER 15, 2002 —
RECONSIDERATION DENIED NOVEMBER 21, 2002 

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling, Jason W. Graham,* for appellants.

---

[13] (Citation omitted; emphasis supplied.) Supra at 332.

[14] See *Jones v. Wellon*, 237 Ga. App. 62 (514 SE2d 880) (1999).

[15] (Punctuation omitted.) *Ajayi v. Williams*, 248 Ga. App. 325, 329-330 (1) (d) (546 SE2d 537) (2001).

[16] See id.

*Byrne, Moore & Davis, Francis X. Moore, Kathy R. Bess*, for appellees.