**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 22, 2021**

# In the Court of Appeals of Georgia

A21A0593. BEASLEY et al. v. GEORGIA DEPARTMENT OF
  CORRECTIONS.

DILLARD, Presiding Judge.

The underlying facts of this case are tragic. In the summer of 2017, two experienced corrections officers were killed in the line of duty by two of the inmates they were transporting. Phillip Beasley witnessed the aftermath of this harrowing ordeal after stopping his vehicle behind the halted prison bus and soon was confronted by the inmates, who threatened him at gunpoint and stole his car. He escaped with his life, and (along with his wife) eventually filed suit against the Georgia Department of Corrections, seeking damages for the emotional distress he suffered as a result of this incident. Specifically, the Beasleys contend that the officers' failure to abide by certain departmental policies in transporting

inmates—which they argue created a "public nuisance"—permits them to sue the GDOC for Phillip's injuries under the Georgia Tort Claims Act. The GDOC filed a motion to dismiss the Beasleys' suit on sovereign-immunity grounds, arguing that the assault-and-battery exception to the GTCA's general waiver of the State's immunity bars their claims, and the trial court granted it. For the reasons noted *infra*, we affirm.

We review *de novo* the trial court's ruling on this motion to dismiss because the question of sovereign immunity is one of law, but we are required to sustain the court's factual findings if they are supported by any evidence.[1] And as the party seeking a waiver of the State's immunity, the Beasleys bore the burden of proof before the trial court.[2]

So viewed, the record shows that in the early morning hours of June 15, 2017, while transporting 33 prisoners on a bus, two GDOC officers—Sergeants Curtis

---

[1] *See Bd. of Trustees of Ga. Military College v. O'Donnell*, 352 Ga. App. 651, 651 (835 SE2d 688) (2019) ("We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them[.]" (punctuation omitted)); *see also Ga. Dep't of Natural Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014) (noting that the issue of sovereign immunity is a question of law which is reviewed de novo).

[2] *See Ga. Dep't of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016); *O'Donnell*, 352 Ga. App. at 651 ("[T]he burden of proof is on the party seeking the waiver of immunity." (punctuation omitted)).

Billue and Christopher Monica—were tragically killed with their own service weapons after two inmates—Ricky Dubose and Donnie Brown—suddenly breached the security gate and entered the front of the vehicle. The ensuing investigation revealed that the officers violated several GDOC policies prior to and during the transport, including failing to strip search the inmates, use double locks on handcuffs, lock the security gate, remain awake and alert, wear ballistic vests, or conduct the transport after sunrise.

Upon escaping, the inmates who killed the officers sprinted toward a vehicle stopped behind the halted prison bus, which was occupied by Phillip Beasley—who was on his way to work. Then, once they reached Phillip's vehicle, the inmates demanded—with a gun placed firmly against his head—that he exit his vehicle, which he did before running away with the expectation that he would be "shot at any moment." And as a result of this harrowing experience, Phillip now suffers from PTSD, anxiety, hyper-vigilance, nightmares, sleeplessness, anger, sadness, and estrangement from his wife and children.

On June 11, 2018, the Beasleys sent the GDOC notice of their claims and, thereafter, filed suit on June 10, 2019, seeking damages and claiming that the GDOC created a public nuisance, was liable for both negligence and gross negligence, and

committed trespass. The GDOC filed a special appearance answer, in which they asserted that the Beasleys' claims were barred by sovereign immunity, and then proceeded to file a motion to dismiss on the same grounds. And following oral argument, the trial court granted the GDOC's motion to dismiss, concluding that for each of the Beasleys' claims, "the actual loss incurred by the Plaintiff is a result of an assault or battery." So, notwithstanding the numerous policy violations the GDOC officers committed, the trial court found that the Beasleys would never have incurred damages without the inmates' actions, and the assault and battery fell within the types of losses prohibited by the GTCA.[3]

This appeal by the Beasleys follows, in which they argue the trial court erred by (1) failing to recognize that the officers' conduct constituted a public nuisance, (2) finding that because an assault or battery occurred, the GDOC was immunized from liability for the public nuisance it created prior to the car jacking, and (3) applying the assault-and-battery exception of the GTCA in a way that "ignores established tort principles regarding proximate cause."

---

[3] *See* OCGA § 50-21-20 ("This article shall be known and may be cited as 'The Georgia Tort Claims Act.'").

4

Under the Georgia Constitution, the sovereign immunity of our state "may be waived only as provided by the [General Assembly] in a tort claims act or an act of the [General Assembly] which specifically provides that sovereign immunity is waived and the extent of such waiver."[4] And under this authority, our General Assembly enacted the GTCA, which provides, in relevant part, that

> [t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances;

---

[4] *Youngblood v. Gwinnett Rockdale Newton Cmty. Srvc. Bd.*, 273 Ga. 715, 716 (2) (545 SE2d 875) (2001); *see* GA. CONST., Art. I, Sec. II, Par. IX (d) ("Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived."); GA. CONST., Art. I, Sec. II, Par. IX (e) ("Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.").

provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.[5]

One exception to the general GTCA waiver provides that the State is not liable for losses resulting from "[a]ssault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights[.]"[6] And the GTCA defines "loss" to mean "personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence."[7] So, with these guiding principles in mind, we turn to the Beasleys' claims of error.

1. For starters, the Beasleys argue the trial court erred by concluding that their losses were the result of an assault and battery and failing to recognize the corrections officers' conduct constituted a public nuisance.[8] More specifically, they contend that

---

[5] OCGA § 50-21-23 (a).

[6] OCGA § 50-21-24 (7).

[7] OCGA § 50-21-22 (3).

[8] The Beasleys do not mention their claim of trespass on appeal and so we do not address the trial court's application of sovereign immunity to that claim, which has been abandoned. *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823

the GDOC is liable for the now-deceased officers' "improper transportation of violent criminals [which] interferes with the use of the public highways" because when the prisoner transport bus stopped, it obstructed the roadway; and "[t]he prisoners created a second obstruction of the highway when they emerged from the bus, unsupervised, and making their escape." Thus, the Beasleys maintain that the trial court erred by determining, as a matter of law, that these facts did not constitute a public nuisance. At a minimum, they claim that the question of whether the relevant facts constitute such a nuisance is a question for a jury. Finally, the Beasleys assert that affirming the trial court's decision will "violate the separation of powers" because a public nuisance is a tort, and the GTCA explicitly waives the State's immunity for the torts of officers and employees. But all of these arguments are unavailing.

---

SE2d 763) (2019) (explaining that the Court will not address potential issue or argument that appellant did not raise on appeal); *Rollins v. Legg*, 179 Ga. 85, 85 (2) (175 SE 382) (1934) ("The petition prayed for attorney's fees on account of bad faith and litigiousness on the part of the sheriff. The plaintiff in his brief does not argue his alleged right to an award of attorney's fees, and this feature of the case is treated as having been *abandoned*."); *Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. App. 75, 79 (3) (585 SE2d 138) (2003) (deeming issue not argued on appeal abandoned).

It is well established that the "nuisance doctrine"[9] for purposes of sovereign immunity allows the State to be held liable for "creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property."[10] But this sovereign-immunity doctrine is firmly rooted in the concept that "the government may not take or damage private property for public purposes without just and adequate compensation."[11] Importantly, personal injury for purposes of inverse condemnation based on a public nuisance does not "constitute personal property that

---

[9] The Supreme Court recently explained that "nuisance exception" is a misnomer, and "it is more apt to refer to the 'nuisance doctrine'. . . ." *Gatto v. City of Statesboro*, Slip Op. at 11 (Ga. June 21, 2021).

[10] *Ga. Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. at 600 (2), *quoting City of Thomasville v. Shank*, 263 Ga. 624, 625 (1) (437 SE2d 306) (1993).

[11] *Id.*; *see* GA. CONST., Art. I, Sec. III, Par. I (a) ("Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."); *Dep't of Transp. v. Mixon*, 355 Ga. App. 463, 464-65 (1) (844 SE2d 524) (2020) (explaining that DOT's argument that trial court erred by failing to find nuisance claim barred by sovereign immunity provided nothing for review because trial court interpreted the "nuisance" claim as a claim for inverse condemnation); *Columbia Cnty. v. Doolittle*, 270 Ga. 490, 491 (1) (512 SE2d 236) (1999) (explaining that the eminent domain provision of the Georgia Constitution waives sovereign immunity in an inverse condemnation action, and therefore, a county may be sued for damages and enjoined for creating or maintaining a nuisance); *see also Gatto*, Slip Op. at 11-12 ("Perhaps the most common municipal nuisance scenario is that involving damage to property caused by the construction or maintenance of municipal sewer and drainage systems.").

8

can be taken,"[12] and so "[s]overeign immunity bars any action for personal injury or wrongful death . . . arising from nuisance or inverse condemnation."[13] And here, we are dealing with personal injuries, not a taking of personal property via a public nuisance.[14] As a result, the trial court properly dismissed the Beasleys' claims because

[12] *Howard v. Gourmet Concepts Intern., Inc.*, 242 Ga. App. 521, 524 (3) (529 SE2d 406) (2000); *accord Bd. of Commissioners of Glynn Cnty. v. Johnson*, 311 Ga. App. 867, 871 (1) (c) (717 SE2d 272) (2011); *Rutherford v. DeKalb Cnty.*, 287 Ga. App. 366, 369 (2) (651 SE2d 771) (2007); *see DeKalb Cnty. v. Orwig*, 261 Ga. 137, 138 (1) (402 SE2d 513) (1991) ("[A] county cannot be liable for a nuisance which does not rise to the level of a taking of property. It follows from our holding that damages in cases such as this one cannot include such items as damages for mental distress and expenses of litigation.").

[13] *Howard*, 242 Ga. App. at 524 (3); *see Orwig*, 261 Ga. at 138 (1); *Kordares v. Gwinnett Cnty.*, 220 Ga. App. 848, 850-51 (470 SE2d 479) (1996); *Canfield v. Cook Cnty.*, 213 Ga. App. 625, 626 (445 SE2d 375) (1994); *Christian v. Monroe Cnty.*, 203 Ga. App. 342, 343 (1) (417 SE2d 37) (1992).

[14] We acknowledge—as our Supreme Court recently noted (albeit with some degree of skepticism)—that there may be recovery for personal injuries sustained by the maintenance of a nuisance in the municipality context under certain circumstances. *See Gatto*, Slip Op. at 14-15 (discussing *Town of Ft. Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141) (1969) and its "expansive effect on the *municipal* nuisance doctrine" (emphasis added)); *id.* at 15 ("By extending the nuisance doctrine to include personal injuries beyond those tied to the plaintiff's property, *Phillips* enlarged the scope of *municipalities'* potential liability in nuisance." (emphasis added)); *see also Shank*, 263 Ga. at 624 (1) ("[T]he doctrine of sovereign immunity and the nuisance exception which makes municipalities liable for maintaining a nuisance have co-existed for many years in this state. Thus, although it enjoys the protection of sovereign immunity in negligence actions, '[a] municipality like any other individual or private corporation may be liable for damages it causes

it correctly determined that the actual losses—or *damages*—they suffered were solely due to the assault and battery perpetrated by the two inmates.[15] Indeed, the reason for the roadway's obstruction was unknown until the inmates emerged from the vehicle and approached Phillip; and it was only then that he sustained any damages.[16] It

to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or ministerial function.'" (quoting *Phillips*, 224 Ga. at 837-38)). But here, we are dealing with a State agency, *not* a municipality. *See State Highway Dep't v. Barrett*, 124 Ga. App. 703, 703 (3) (185 SE2d 624) (1971) (declining to apply *Phillips*, which dealt with the liability of a municipality, because the State Highway Department "cannot be equated to a municipality" because "[i]t is an agency of the State and a part of the sovereign"); *see also Donaldson v. Dep't of Transp.*, 212 Ga. App. 240, 242 (441 SE2d 473) (1994) ("[A]ctions for personal injury may not be maintained against governmental entities under such an eminent domain theory."), *relying upon Wilmoth v. Henry Cnty.*, 251 Ga. 643, 644 (1) (309 SE2d 126) (1983) ("We hold that a county may not be sued under the theory of eminent domain in a tort action for personal injury where the county would otherwise be authorized to assert its civil immunity.").

[15] *See* OCGA § 50-21-22 (3) ("'Loss' means personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence.").

[16] *See Youngblood*, 273 Ga. at 716 (3) ("Because the act causing the underlying loss in this case, the beating . . . , constitutes a battery, the exception in OCGA § 50-21-24 (7) to the waiver of sovereign immunity applies and the trial court did not err in granting summary judgment . . . on [the] negligence claims."); *Chin Pak v. Ga. Dep't of Behavioral Health & Developmental Disabilities*, 317 Ga. App. 486, 488-89 (731 SE2d 384) (2012) (holding that because the underlying loss suffered by the plaintiff was from the assault and battery that caused the decedent's death, defendant was immune from liability for the allegedly negligent treatment of the party that

10

strains credulity, then, to suggest that merely stopping behind a prison transport bus caused Phillip damages or that the violation of GDOC policies damaged him in any way *before* the inmates actually emerged from the bus and approached him. Accordingly, this enumeration is without merit.

2. Next, the Beasleys argue that the assault and battery committed by the inmates "does not immunize the GDOC from liability for the losses caused by the GDOC's own tort." Specifically, they contend that the assault and battery were not "the sole or even the initial cause of the Beasleys' losses" because the GDOC first created a public nuisance, and the loss could be apportioned among more than one proximate cause. In doing so, the Beasleys claim that the trial court erroneously relied on *Department of Human Resources v. Coley*,[17] and maintain it should have instead

---

committed the assault and battery); *Oconee Comm. Srvc. Bd. v. Holsey*, 266 Ga. App. 385, 386 (597 SE2d 489) (2004) (holding that "[b]ecause [the plaintiff's] death resulted from the stabbing, which constitutes an assault or battery within the meaning of OCGA § 50-21-24 (7)," sovereign immunity shielded the defendant, which operated a community home, from liability for the negligent and unsupervised placement of a housemate with mental illness who stabbed the plaintiff (punctuation & footnote omitted)).

[17] 247 Ga. App. 392 (247 SE2d 392) (2000), *disapproved of by Ga. Dep't of Transp. v. Heller*, 285 Ga. 262 (674 SE2d 914) (2009), *as explained* infra *in note 23*.

rested its decision on *Georgia Department of Transportation v. Heller*,[18] which distinguished *Coley*.[19]

In *Coley*, we determined that when the plaintiff's losses or damages are caused by or result from an assault or battery, the State is immune from liability for other acts from which the loss *did not* result.[20] And as previously noted,[21] the Supreme Court of Georgia has adopted this principle.[22] But in *Heller*, our Supreme Court distinguished *Coley*—and, by implication, its own opinion adopting the principle—by explaining "the latter event in *Coley* that led to the plaintiff's loss was an event for which the

[18] 285 Ga. 262 (674 SE2d 914) (2009).

[19] *Id.* at 265-66 (1).

[20] *See Coley*, 247 Ga. App. at 394 (1) ("In determining whether the [assault and battery] exception set forth in OCGA § 50-21-24 (7) applies, . . . the focus is not on the government action taken or the duty allegedly breached by the government, but on the act causing the underlying loss, and it is not necessary that such act have been committed by a state officer or employee. In this case, it is apparent that the act allegedly causing the underlying loss—i.e., the strangulation . . . —constitutes an assault or battery within the meaning of the exception. Accordingly, the exception to the waiver of sovereign immunity applies, and the trial court erred in denying [the defendant's] motion to dismiss." (punctuation & citations omitted)).

[21] *See* note 14 & accompanying text.

[22] *See Youngblood*, 273 Ga. at 717 (3) ("Because the act causing the underlying loss in this case, the beating . . . , constitutes a battery, the exception in OCGA § 50-21-24 (7) to the waiver of sovereign immunity applies and the trial court did not err in granting summary judgment . . . on [the] negligence claims.").

12

State was entitled to sovereign immunity [under the assault-and-battery exception], whereas, here, the opposite is true."[23] In *Heller*, the event that caused the plaintiff's damages *was not* an event for which the State was immune from liability (*i.e.*, the State's allegedly improper design of the roadway).[24] But as explained in Division 1 *supra*, the loss in *this* case was *solely* attributable to the second event—the inmates' assault and battery upon Phillip.[25] Thus, this enumeration is likewise without merit because this case is analogous to *Coley* and its progeny, rather than *Heller*.

3. Finally, the Beasleys assert that the trial court's application of the assault-and-battery exception within the GTCA "ignores established tort principles regarding

---

[23] *Heller*, 285 Ga. at 266 (1). In addition to making this distinction, *Heller* disapproved of *Coley* to the extent the following language in that opinion could be "read to reach an outcome different from the one reached in" *Heller*: "It is true that there may be more than one proximate cause of a plaintiff's loss. Regardless of the number of proximate causes, however, the plaintiff sustains only one 'loss.' This loss cannot be apportioned among the various proximate causes, with part of the loss attributed to one event and another part attributed to a different event." 285 Ga. at 266 (1).

[24] *Heller*, 285 Ga. at 266 (1) ("In the instant case . . . there is no express exception to the waiver that would provide immunity to the State for the second event that allegedly caused the plaintiff's loss. . . . The latter event that led to the loss, the allegedly poorly designed roadway, was something for which the State was not entitled to the protection of sovereign immunity.").

[25] *See supra* note 16 & accompanying text.

13

proximate cause." And in doing so, they ask us to overturn our current interpretation of the assault-and-battery exception to the GTCA's general waiver of liability. Specifically, the Beasleys urge us to reconsider our interpretation of this exception because (a) the GTCA was patterned after the Federal Tort Claims Act, (b) the current interpretation is "based on an erroneous statutory interpretation and unsound reasoning," and (c) adopting the Beasleys' preferred interpretation would "enhance" rather than "hamper" the "legislative purpose" of the GTCA. We will address each of these contentions in turn.

(a) *The General Assembly's "Intent."* The Beasleys encourage us to overrule *Coley* because—in their view—it strays from the interpretation of the Federal Tort Claims Act, after which the GTCA was patterned. But as our Supreme Court has aptly noted, the GTCA was patterned after the FTCA "in most respects";[26] and "in most

---

[26] *Edwards v. Dep't of Children & Youth Srvcs.*, 271 Ga. 890, 891 (525 SE2d 83) (2000); *see Coley*, 247 Ga. App. at 395 (2) (explaining that the premise that "the GTCA is simply a 'clone' of the FTCA" is "incorrect").

14

respects" does not mean in *all* respects.[27] Indeed, as we thoroughly explained in *Coley*, the assault-and-battery exception within the GTCA is one such distinction.[28]

The language of the GTCA assault-and-battery exception is plain and unequivocal—the State has no liability for personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence that are the result of *assault*, *battery*, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights.[29] Suffice it to

---

[27] *See Williams v. Ga. Dep't of Human Res.*, 272 Ga. 624, 628 (532 SE2d 401) (2000) (Benham, J., dissenting) (noting that "the FTCA is not identical to the GTCA").

[28] *See* 247 Ga. App. at 394-97 (2) (explaining the ways in which the GTCA differs from the FTCA for purposes of the assault-and-battery exception); *see also Dep't of Transp. v. Montgomery Tank Lines, Inc.*, 253 Ga. App. 143, 145 (558 SE2d 723) (2001) (On Motion for Reconsideration) (noting that there are distinctions between the GTCA and FTCA); *Ga. Military College v. Santamorena*, 237 Ga. App. 58, 60 (1) (514 SE2d 82) (1999) ("Plaintiff cites several federal cases construing the Federal Tort Claims Act (FTCA) for the proposition that the assault and battery exception should not apply given the special relationship between [the plaintiff] and the State. However, plaintiff's reliance on these cases is misplaced, as those cases are based upon language in the FTCA that differs from the GTCA.").

[29] *See* OCGA § 50-21-22 (3); OCGA § 50-21-24 (7); *see also Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013) ("[I]f the statutory text is 'clear and

15

say, we decline the Beasleys' invitation to interpret the word "losses" in the GTCA

assault-and-battery exception as sharing a meaning with "claim"—as used in the

FTCA assault-and-battery exception[30]—when the GTCA explicitly provides

definitions for these two words.[31] To do otherwise is to engage in judicial

unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end."); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014) ("[I]n analyzing the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant." (punctuation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning . . . ." (punctuation & citation omitted)).

[30] *Compare* 28 USC § 2680 (h) (providing exception to waiver of sovereign immunity for "[a]ny *claim* arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" (emphasis supplied)), *with* OCGA § 50-21-24 (7) ("The state shall have no liability for *losses* resulting from . . . [a]ssault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights[.]" (emphasis supplied)).

[31] *Compare* OCGA § 50-21-22 (1) ("'Claim' means any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the scope of his or her official duties or employment."), *with* OCGA § 50-21-22 (3) ("'Loss' means personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for

16

policymaking disguised as statutory interpretation. Appellate courts must discern the "intent" of the legislature through the words contained in enacted statutes, and nothing more.[32]

---

negligence.").

[32] *See Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 55 (1) (806 SE2d 215) (2017) ("[W]e are charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by higher courts. And importantly, both our constitutional system of government and the law of this State prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions.") (footnotes & punctuation omitted)); *Merritt v. State*, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially) ("[W]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause 'unreasonable consequences,' [thus venturing] into dangerously undemocratic, unfair, and impractical territory."); *Bellsouth Telecomm., LLC v. Cobb Cnty.*, 342 Ga. App. 323, 335 n.3 (802 SE2d 686) (2017) (Dillard, J., concurring fully and specially) ("In my view, our appellate courts should stop referencing altogether the ethereal fiction of 'legislative intent' in the context of statutory interpretation. A judge should not care about what any legislator intended but did not expressly provide for in the statutory text."); *see also Richardson v. State*, 276 Ga. 639, 640 (1) (581 SE2d 528) (2003) ("Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." (punctuation omitted)); *In re Whittle*, 339 Ga. App. 83, 89 (1) (793 SE2d 123) (2016) (holding that if appellant's policy arguments are ultimately to prevail, they should be made to our General Assembly, not an appellate court).

(b) *Alleged Unsound Reasoning.* The Beasleys continue by arguing that the current interpretation of the GTCA's assault-and-battery exception is "based on an erroneous statutory interpretation and unsound reasoning." In doing so, they urge us to overrule our decision in *Department of Human Resources v. Hutchinson.*[33]

Specifically, the Beasleys assert that "Georgia courts repeat the same faulty premise each time they apply the assault and battery exception under the GTCA—that courts 'do not look at the duty allegedly breached by the government, but focus on the act causing the plaintiff's loss.'" Although the Beasleys correctly cite to *Georgia Military College v. Santamorena*[34] and acknowledge that *Santamorena* relied upon *Hutchinson* for same,[35] they fail to mention that the Supreme Court of Georgia has explicitly adopted this proposition. Indeed, in *Youngblood v. Gwinnett Rockdale Newton Community Service Board,*[36] our Supreme Court relied upon both *Hutchinson* and *Santamorena* to explain that—unlike other subsections within the GTCA's

---

[33] 217 Ga. App. 70 (456 SE2d 642) (1995).

[34] 237 Ga. App. 58 (514 SE2d 82) (1999).

[35] *See id.* at 61 (1) (a) (explaining that "under the GTCA, we do not look at the duty allegedly breached by the government, but focus on the act causing the plaintiff's loss" and citing to *Hutchinson* in support).

[36] 273 Ga. 715 (545 SE2d 875) (2001).

18

exceptions provision—the so-called assault-and-battery exception "is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein" and "[t]he focus, therefore, is not on the duty allegedly breached by the State but on the act causing the underlying loss regardless of who committed the act."[37]

We are, of course, bound by the decisions of the Supreme Court of Georgia.[38] So, to the extent the Beasleys ask us to abandon this interpretation of the statute and overrule this progeny of cases, we are not at liberty to do so given our Supreme Court's explicit adoption and approval of same.[39]

---

[37] *Id.* at 717 (3) (citations to *Hutchinson* and *Santamorena* omitted); *accord Southerland v. Ga. Dep't of Corrections*, 293 Ga. App. 56, 58-59 (1) (666 SE2d 383) (2008); *Holsey*, 266 Ga. App. at 385, 386 (597 SE2d 489) (2004).

[38] *See* GA. CONST., Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *Ward v. Marriott Int'l, Inc.*, 352 Ga. App. 488, 493 (2) (a) (83E2d 322) (2019) ("[A]s an intermediate appellate court, we are bound by Georgia statutes and Supreme Court of Georgia decisions. When the Supreme Court has addressed an issue in clear terms, this [C]ourt is not at liberty to decline to follow the established rule of law." (punctuation omitted)); *Dillard v. Bishop Eddie Long Ministries*, 258 Ga. App. 507, 511 (3) (574 SE2d 544) (2002) ("It is axiomatic that this Court is bound by the precedent of the Supreme Court.").

[39] The Beasleys also argue in their brief that the General Assembly never "intended" for the assault-and-battery exception to apply to non-State actors because the FTCA assault-and-battery exception has been interpreted to only apply to State actors. But as noted in *Youngblood*, our Supreme Court agrees that the exception does

19

(c) *Legislative "Purpose."* Finally, the Beasleys contend that if we adopt their "interpretation" of the GTCA, doing so would "enhance" rather than "hamper" the "legislative purpose" of the statute. This is, of course, just an invitation to depart from the plain meaning of the statute and adopt their preferred policy preference.[40] We decline to do so. And more importantly, for the same reasons given in Division 3 (b) *supra*—*i.e.*, our Supreme Court's binding precedent—this argument is likewise a nonstarter.

For all these reasons, we affirm the trial court's dismissal on grounds of sovereign immunity.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*

---

not exclusively apply to State actors. *See* 273 Ga. at 717 (3) ("Unlike other subsections within OCGA § 50-21-24, subsection (7) is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein."). So, this argument too is unavailing. *See supra* note 38 & accompanying text (explaining that decisions of the Supreme Court are binding as precedent on all other courts, including this one).

[40] *Able*, 321 Ga. App. at 636 ("Suffice it to say, it is not the role of a judge to 'interpret' constitutional or statutory provisions through the prism of his or her own personal policy preferences.").